JERSEY–CREME CO. v. McDANIEL BROS. BOTTLING CO.

(Court of Civil Appeals of Texas. Texarkana. Jan. 2, 1913. Rehearing Denied Jan. 16, 1913.)

MONOPOLIES (§ 17*) — ANTI-TRUST ACTS — "CONSPIRACY IN RESTRAINT OF TRADE"— "COMMODITY"—"ARTICLE OF MERCHANDISE."

A contract giving plaintiff the exclusive right to bottle "Jersey-Creme," a drink, in a certain part of the country, by which the plaintiff agreed to use defendant's copyrighted labels and bottles and to buy the syrup for making such drink from the defendant, was a "conspiracy in restraint of trade" within Anti-Trust Statute of 1903 (Acts 28th Leg. c. 94) § 3, defining such conspiracy as an agreement between two or more engaged in selling or buying any article of merchandise, produce, or commodity to refuse to buy from or sell to any other person; the bottles and labels being only incidentals, and "Jersey-Creme" being a "commodity" or "article of merchandise," and since it indirectly conferred upon appellee the exclusive right to purchase and resell the syrup.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. § 17.*

For other definitions, see Words and Phrases, vol. 1, pp. 511–515; vol. 2, pp. 1309, 1310, 1454–1461; vol. 8, p. 7613.]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

---

Action by the McDaniel Bros. Bottling Company against the Jersey-Creme Company. Judgment for plaintiff, and defendant appeals. Reversed.

Geo. Thompson and Flournoy, Smith & Storer, all of Ft. Worth, for appellant. Q. T. Moreland, W. A. Hanger, and David B. Trammell, all of Ft. Worth, for appellee.

WILLSON, C. J. Appellant, a corporation, owned a secret formula for compounding a syrup used to make a drink called "Jersey-Creme." McDaniel Bros. & Co., a copartnership, were engaged in the business of bottling such drinks and selling same in case lots to dealers. December 7, 1906, the parties entered into a contract as follows:

"Contract.

"Office Jersey-Creme Company, Fort Worth, Texas.
"Authorized Bottlers' Contract.

"Name licensee: McDaniel Bros. & Co.
"Address: P. O. Fort Worth; County, Tarrant; State, Texas.
"Contract begins: Jan. 1, 1907, and ends Jan. 1, 1912.
"Jersey-Creme Company withholds the right to cancel this contract in the event licensee should willfully neglect the sale of Jersey-Creme or should adulterate the syrup in putting the same on the market.
"Exclusive territory for bottling purposes:

"From Ft. Worth to and including Weatherford.
"    "      "     "         "        Alvord.
"    "      "     "         "        Denton.
"    "      "     "         "        Grand Prairie.
"    "      "     "         "        Plano.
"    "      "     "         "        Sanger.
"    "      "     "         "        Chico.
"    "      "     "         "        Graham.
"    "      "     "         "        Joshua.
"    "      "     "         "        Grandview.
"    "      "     "         "        Midlothian.

"In consideration of exclusive bottling privilege consignee agrees to use not less than (No. gallons) five thousand gallons Jersey-Creme syrup in a period of five years from date of contract. Price of Jersey-Creme 75c. per gallon f. o. b. your nearest shipping point. Terms: 30 days or two (2) per cent. discount 10 days for cash.
"Jersey-Creme Company agrees to furnish labels at 20c. per M and full line of advertising matter free of charge to licensee, who in turn agrees to distribute this advertising matter where it will do the most good to all parties concerned. Licensee further agrees to put up Jersey-Creme in crown bottles using our labels on bottles to make an attractive package.
"Price of decorated Jersey-Creme crowns 30 cents per gross f. o. b. Baltimore, Md.
"Licensee agrees to make drink as follows: One full ounce of Jersey-Creme syrup to seven ounces of carbonated water. If a larger bottle is used a trifle more syrup is required.
"We recommend that Jersey-Creme be sold for not less than 60 cents per case, and not more than 70 cents per case of two (2) dozen eight (8) ounce bottles.
"Date Dec. 7, 1906.

"[Signed] Jersey-Creme Co.
"Per C. J. Howell, Sect. & Mgr.
"Licensee: McDaniel Bros. & Co. (Inc.), per J. S. McDaniel."

Appellee, also a corporation, succeeded McDaniel Bros. & Co. and became entitled to assert their rights and incurred their liability under the contract. It appeared that the labels and crowns referred to in the contract were copyrighted. Appellant became dissatisfied with the way appellee was performing its undertaking under the contract, and about November, 1907, declared same canceled, and thereafterwards refused to sell appellee Jersey-Creme in accordance with its terms. This appeal is from a judgment for $4,000 in favor of the latter as the damages occasioned to it by such refusal.

We think the contention made that the agreement between the parties should be construed to be a "conspiracy in restraint of trade," within the meaning of section 3 of the Anti-Trust Statute of 1903 (General Laws, p. 119), should be sustained. Such a conspiracy is defined as follows in that section of the statute: "Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity, enter into an agreement or understanding to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity." That Jersey-Creme was a "commodity" or "article of merchandise," and that appellant engaged in selling and appellee in buying and selling it, is clear. That it was the principal subject-matter of the contract, and that the labels and crowns were merely incidents thereof, we think also is clear. If, therefore, the contract was not within the inhibition of the statute, it was because appellant thereby did not bind itself not to sell the syrup to "any other person, firm, corporation or association of persons" other than appellee, in the territory designated, while the contract was in force. Notwithstanding the language limiting the exclusive features of the contract to "bottling purposes" and "bottling privileges," shown to have consisted of the right to use the copyrighted labels and crowns, we think it appeared that the purpose and intent of the parties was to bind appellant to sell the syrup to appellee only, and so confer upon it the exclusive right during the life of the contract to sell same in the territory specified. Appellee's president and general manager testified that, without the "bottling privileges," the syrup would not have been of any value to appellee, because it could resell the syrup only when it was identified, as bottled, by the labels or crowns. This indicates, it seems to us, that the object intended to be accomplished by the agreement was to indirectly confer upon appellee the exclusive right to purchase and resell the syrup, an "article of merchandise," by conferring upon it the exclusive right to use the copyrighted labels and crowns, which were not "articles of merchandise." It is obvious, if the operation of the statute can be defeated by resort to such a scheme, that the purpose of the Legislature in enacting it will not have been accomplished.

As supporting its contention that the con-

tract was valid, appellee has cited us to a number of cases decided by the courts of this state. As we understand them, no one of the number supports the contention. Most of them are cases construing provisions, unlike the one controlling here, in statutes in force prior to 1903, when the anti-trust statute now in force was enacted; others are cases construing other provisions of the act in force; while others are cases so clearly distinguishable from this one on their facts as to render them of no value in determining the disposition to be made of this appeal.

We think the judgment of the court below should be reversed and judgment here rendered that appellee take nothing by its suit, and it is so ordered.