**COCA–COLA CO. et al. v. STATE.**
**(No. 6240.)**

(Court of Civil Appeals of Texas. Austin. Nov. 10, 1920.)

1. **Monopolies ⬤═8—Not favored except as to matter of patents, etc.**

Private monopolies are contrary to the genius of a commercial people, and contracts in restraint of trade are not looked upon with favor, but the federal Constitution, however, provides for the creation of monopolies in the matter of patent rights, trade-marks, and copyrights (article 1, § 8).

2. **Copyrights ⬤═2 — Patents ⬤═2 — Trade-marks and Trade-names ⬤═42—States cannot nullify congressional acts.**

Where Congress has legislated under Const. U. S. art. 1, § 8, providing for monopolies in the matter of patent rights, trade-marks, and copyright, no state can nullify its acts.

3. **Copyrights ⬤═50—Patents ⬤═216—Trade-marks and trade-names ⬤═35—Assignee may be restricted as to use.**

The owner of a patent right, copyright, or trade-mark, having the exclusive right to manufacture and sell the article protected thereby, and being under no legal obligation to grant such right to another, may impose upon his assignee such restrictions as he may see proper, and to which his assignee will agree, including the price at which the article may be sold, the territory in which it may be manufactured and sold, the material that may be used in its manufacture or in connection therewith.

4. **Copyrights ⬤═50—Patents ⬤═191—Trade-marks and trade-names ⬤═31—Article having been sold no restrictions can be imposed upon vendee as to future sale.**

The owner of an article protected by patent, copyright, or trade-mark, when he has manufactured and sold the same, cannot impose restrictions upon his vendee as to the future sale of the same, since having parted with his ownership therein it enters the channels of trade as an article of commerce and is thereafter beyond his control.

5. **Copyrights ⬤═41, 42 — Patents ⬤═191 — Trade-marks and trade-names ⬤═23—Not articles of commerce in the sense that they may be consumed by purchasing public.**

A trade-mark, patent, or copyright is property in the sense that it has a commercial value and may be sold as other property, but it is not an article of commerce in the sense that it may be consumed by the purchasing public.

6. **Trade-marks and trade-names ⬤═32—Article need not be actually manufactured by owner of trade-mark.**

An article need not be actually manufactured by the owner of the trade-mark, it being enough that it is manufactured under his supervision and according to his directions, thus securing both the right of the owner and the right of the public.

7. **Monopolies ⬤═17(1)—Coca-Cola syrup held not article used by public, and resale may be restricted.**

Coca-Cola syrup, used in the manufacture of Coca-Cola, is not an article to be used by the public, but is useful only as an ingredient in the manufacture of bottled Coca-Cola, and as no one but the licensee of the Coca-Cola Company has the right to manufacture bottled Coca-Cola, it was no restriction on trade to provide in a contract of assignment of rights

that bottlers should not sell the syrup, which was sold to them by the company.

**8. Copyrights ⊙—1 — Applies exclusively to works of art or literature.**

A copyright, while possessing the same attributes of monopoly as a patent or trade-mark, differs from both of them in that it applies exclusively to works of art or literature.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the State against the Coca-Cola Company and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Candler, Thomson & Hirsch, of Atlanta, Ga., H. O. Head, of Sherman, and Crane & Crane, of Dallas, for appellants.

C. M. Cureton, Atty. Gen., and W. A. Keeling, Asst. Atty. Gen., for appellee.

Findings of Fact.

JENKINS, J. This suit was brought by appellee to restrain the Coca-Cola Company, the Coca-Cola Bottling Company, and certain local bottling companies from executing certain contracts, hereinafter stated, as being in violation of the anti-trust laws of this state. It was tried before the court practically upon an agreed statement of facts, and judgment was rendered as prayed for.

We copy from the agreed statement of facts, and adopt as our findings of fact the following:

"It is agreed that since the 22d of February, 1892, the defendant, the Coca-Cola Company, has been the owner and entitled to the exclusive use of a formula for the making and manufacture of a beverage known as Coca-Cola, and the basic syrups from which said beverage is made; and likewise the owner and entitled to the exclusive use of the trade-name 'Coca-Cola,' which trade-name was exclusively applied to the said beverage, Coca-Cola, and the basic syrups from which said beverage was made; that it has at all times since said date been the exclusive owner of said trade-name and said formula, and entitled to their exclusive use, unless the sale of either basic syrup, as a matter of law, carries with it the right to dilute and bottle same, and then sell same under the trade-mark of defendant, Coca-Cola Company, as bottled Coca-Cola, and without the consent of said defendant.

"That being the exclusive owner of the said trade-name Coca-Cola and said formula, the defendant, the Coca-Cola Company, did on the 14th day of May, 1892, apply to the United States Patent Office to have its trade-name Coca-Cola registered as a trade-mark for its beverage and basic syrups out of which same was made; that its application was granted, and on the 31st of January, 1893, the said trade-name Coca-Cola was registered as its trade-mark for its said beverage and its said basic syrups, as will more fully appear by reference to the certificate of registration issued

by the said Patent Office of the United States, attached to defendants' answer as Exhibit A.

"That thereafter, to wit, on or about the 22d day of April, 1905, it being still the exclusive owner of the said formula under which Coca-Cola was manufactured, the trade-name Coca-Cola and the trade-mark registered as aforesaid, and entitled to the exclusive use thereof, as above explained, applied to the said Patent Office of the United States to have its trade-mark Coca-Cola again registered therein, in compliance with the act of Congress approved February 20, 1905, which said Patent Office granted its application on the 31st of October, 1905, and registered the same as a trade-mark for the tonic beverages of the said defendant, the Coca-Cola Company, and the basic syrups for the manufacture of said beverages, all of which will more fully appear by reference to certificate of registration issued by said Patent Office of the United States, and attached to defendants' answer, marked 'Exhibit B'; that said certificate of registration is still in full force and effect, and wholly unrevoked or canceled.

"That the Coca-Cola Company is entitled to the sole and exclusive right, both general and special, as above explained, to use and employ the trade-mark Coca-Cola or trade-name Coca-Cola; that this right of the Coca-Cola Company has been generally recognized by the public; that this right to sell this beverage, thus bottled and sold under its trade-mark, is exceedingly valuable, and worth more than $5,000.

"That the said defendant, the Coca-Cola Company, has continuously since February 22, 1892, used the said trade-mark Coca-Cola to designate its beverages and syrups from which they are made, and particularly to designate its beverage sold in bottles; that because of its exclusive ownership and exclusive use the defendant Coca-Cola Company, from said date last named, has spent the sum of not less than $10,000,000 in advertising its said beverages and popularizing same throughout the United States and foreign countries as well.

"The Coca-Cola Company, it is admitted, contends that these contracts are necessary in order to protect the integrity of its product, and therefore the value of its trade-mark. It contends that unless it can make contracts for the exclusive use of its trade-mark, such trade-mark will be of little value to it. The plaintiff contends that these contracts hereto attached are in restraint of trade and violative of the anti-trust laws of Texas, and that the defendant should therefore be enjoined from further operation under them."

In addition to the above, we find the following facts:

The Coca-Cola Company is a corporation, as is also the Coca-Cola Bottling Company, each having a permit to do business in Texas. The Coca-Cola Company is the owner of a secret process, by which it manufactures two kinds of syrups, each of which is known as Coca-Cola syrup. One is sold to the proprietors of soda fountains, to be mixed with carbonated water and sold to be drunk at the

counter. This syrup is not involved in this suit. The other is manufactured to be used solely in the manufacture of a bottled drink, known as Coca-Cola.

The Coca-Cola Company is the owner of the trade-mark, Coca-Cola, and the same is used by it and its assignees to designate a bottled drink sold under the name Coca-Cola. Prior to the institution of this suit, the Coca-Cola Company entered into a contract with the Coca-Cola Bottling Company, in which the latter company was granted the exclusive right to manufacture Coca-Cola in the state of Texas, and sell the same in bottles under the trade-mark Coca-Cola. It was provided in said contract that Coca-Cola should be composed of certain ingredients in certain proportions, including Coca-Cola syrup, and bottled in a specified manner; also that the bottling company would buy Coca-Cola syrup exclusively from the Coca-Cola Company at an agreed price, and that it would not use any substitute therefor in bottling Coca-Cola, and that it would not sell such syrup; also that the Coca-Cola Company would not sell its bottling syrup to any one else in Texas. The Coca-Cola Bottling Company was permitted to make similar contracts with local bottling companies as to definite limited territory in Texas, subject to the approval of the Coca-Cola Company. The bottling company has made such contracts with numerous local bottling companies in this state, and all such contracts are being carried out by the respective parties thereto, and will continue so to be unless restrained by an order of court. There are no restrictions in these contracts as to the sale of bottled Coca-Cola, either as to price or territory.

### Opinion.

Contracts creating monopolies and in restraint of trade, or alleged so to be, have been a fruitful source of litigation. The decisions in reference thereto have not been altogether harmonious. It would serve no useful purpose to cite and discuss these numerous decisions. We will content ourselves with stating some general principles and applying them to the facts of the instant case, citing a few cases which we deem in point in support of our views of the law as herein expressed.

[1, 2] Private monopolies are contrary to the genius of a commercial people, and contracts in restraint of trade are not looked upon with favor. The Constitution of the United States, however, expressly provides for the creation of monopolies in the matter of patent rights, trade-marks and copyright. Article 1, § 8. Congress has legislated under this provision, and no state can nullify its acts. "The very object of these laws is monopoly." Bement v. Harrow Co., 186 U. S. 91, 22 Sup. Ct. 747, 46 L. Ed. 1069; Tea Co.

v. Cream of Wheat Co. (D. C.) 224 Fed. 572. The value of a trade-mark to its owner consists in the monopoly which it gives him by reason of his exclusive right to use the same. Kidd v. Johnson (D. C.) 100 U. S. 617, 620, 25 L. Ed. 770; Coca-Cola Co. v. Butler (D. C.) 229 Fed. 224; Bennett v. Coca-Cola Co., 238 Fed. 513, 151 C. C. A. 449; Baglin v. Cusenier, 221 U. S. 580, 31 Sup. Ct. 669, 55 L. Ed. 869.

[3] The owner of a patent right, copyright, or trade-mark, having the exclusive right to manufacture and sell the article protected thereby, and being under no legal obligation to grant such right to another, may impose upon his assignee such restrictions as he may see proper, and to which his assignee will agree, including the price at which the article may be sold, the territory in which it may be manufactured and sold, the material that may be used in its manufacture, or in connection therewith. Bement v. Harrow Co., supra; Bennett v. Coca-Cola Co., supra; Clark v. Wire Fence Co., 22 Tex. Civ. App. 41, 54 S. W. 392; Bauer v. O'Donnell, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1046, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150; Victrola Talking Machine v. Straus (D. C.) 222 Fed. 524.

[4] The owner of an article protected by a patent, copyright, or trade-mark, when he has manufactured and sold the same, cannot impose restrictions upon his vendee as to the future sale of the same. Having parted with his ownership therein, it enters the channels of trade as an article of commerce, and is thereafter beyond his control. Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 653; Victor Talking Machine v. Straus, supra; Bobbs-Merrill v. Straus, 210 U S. 339, 28 Sup. Ct. 722, 52 L. Ed. 1086; Miles Med. Co. v. Parks, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502; Bauer v. O'Donnell, supra; Hill v. Gray, 163 Mich. 12, 127 N. W. 803; 30 L. R. A. (N. S.) 327.

There is, however, a marked distinction between the sale of an article, the manufacture of which is protected by a patent or copyright, or the right to use a trade-mark in connection with the sale thereof, and the sale of the right so secured. In the one case, the finished article ready for commerce is sold. In the other case, nothing tangible is sold, but only the right to produce and sell such tangible article; in other words, the right to use the exclusive privilege which has been granted to the owner of the patent, copyright, or trade-mark, which, as we have said, may be granted upon such terms as the parties may agree upon, or, failing such agreement, may be withheld altogether. The right of the owner of property to dispose of same upon such terms as he may see proper is universal. The right to fix the terms upon which another (his vendee) may dispose of his property is deemed as being a restraint upon the freedom of trade.

[5] A trade-mark, patent, or copyright is property, in the sense that it has a commercial value, and may be sold as other property, but it is not an article of commerce in the sense that it may be consumed by the purchasing public. However valuable it may be to its owner, it is nothing more than a privilege, valuable because of its exclusiveness. "The property [in a trade-mark] is the use." Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 583. The sale of a trade-mark is nothing more than a license from the owner to use the same; hence his right to impose restrictions upon such license.

[6] The protection given by law has a twofold object; to protect the owner in his property, and to protect the public from being deceived by reason of a misleading claim that the article bearing the trade-mark is the article manufactured by the owner of the trade-mark when in fact it is not. Bennett v. Coca-Cola, supra. The article need not be actually manufactured by the owner of the trade-mark; it is enough that it is manufactured under his supervision and according to his direction. This secures both the right of the owner and the right of the public. Nelson v. Winchell, 203 Mass. 75, 89 N. E. 180, 23 L. R. A. (N. S.) 1150–1160.

The office of a trade-mark is to guarantee the purity of the article, it being presumed that as the owner has the exclusive right to use the same, he will see that the goods sold under it are of such a character as will win and retain the confidence and patronage of the purchasing public. A trade-mark thus becomes "a visible sign of an inward grace."

[7] Applying these legal principles to facts of the instant case, we have an apt illustration of the necessity of the owner of a trademark being able to control its manufacture as security both to his rights and the rights of the public. The trade-mark Coca-Cola has become of great value by reason of the reputation it has acquired. Bottled Coca-Cola is a drink extensively consumed by the public, who are interested in maintaining its purity, and who accept it by reason of the trademark which it bears. To maintain this standard, the Coca-Cola Company stipulated that no syrup other than Coca-Cola syrup should be used in the manufacture of bottled Coca-Cola. Compliance with this stipulation could be secured in no other way than by the bottlers purchasing Coca-Cola syrup from the Coca-Cola Company, for the reason that no one else knows the secret of its manufacture. As Coca-Cola syrup is not an article to be used by the public, but is useful only as an ingredient in the manufacture of bottled Coca-Cola, and as no one except the licensee of the Coca-Cola Company has the right to manufacture bottled Coca-Cola, it was no restriction on trade to provide in the contract that the bottlers should not sell the same. There was no such trade. The licensed bottlers used it for the sole purpose for which it was manufactured. No one else has the right to use it for such purpose. "As the syrup manufactured by the appellant is not itself consumed by the public, * * * there could be no sale of the syrup unless there was a sale of the beverage made therefrom." Bennett v. Coca-Cola Co., supra.

It is the contention of appellee that, inasmuch as the Texas Bottling Company, with the approval of the Coca-Cola Company, has granted to different bottling companies the exclusive right to manufacture and sell bottled Coca-Cola in certain defined territories, and as these contracts virtually cover the entire state, a monopoly has thereby been created. Not so; it only continues the legal monopoly already existing. The Coca-Cola Company, having the exclusive right to sell bottled Coca-Cola in the United States, might itself have operated as many bottling plants as it saw fit in this state, and prohibited all others from bottling Coca-Cola in such territory. The Texas Bottling Company, having acquired the exclusive right to bottle and sell Coca-Cola in Texas, might have done likewise. It cannot be said that a monopoly has been established by a contract where such monopoly already existed, and would have continued to exist without such contract.

As stated in our findings of fact, the contracts here under discussion place no restriction upon the sale of bottled Coca-Cola after it has been manufactured by the bottling company. Any one who chooses to do so may operate a bottling plant and put up and sell bottled drinks. If the Coca-Cola Company could not control the manufacture of Coca-Cola by local bottling companies, the rights both of the public and the Coca-Cola Company might be jeopardized; the public in having palmed off on it an inferior article, and the Coca-Cola Company in having the reputation of its trade-mark destroyed by the sale of such inferior article by a few local bottling companies.

[8] Appellee, in support of its contention herein, cites the case of Jersey Creme Co. v. McDaniel, 152 S. W. 1187. That case is not in point, for the reason that Jersey-Creme syrup was not a patented article, and the Jersey Creme Company had not registered Jersey Creme as its trade-mark. All that it had was a copyright to certain labels. This secured to it the exclusive right to manufacture and sell such labels, but nothing more. This right was not involved in the case. A copyright, while possessing the same attributes of monopoly as a patent or trademark, differs from both of them, in that it applies exclusively to works of art or literature. In a copyright as in a patent, the owner loses control of the article when it is sold. The purchaser of the copyrighted labels might have pasted them on cold drinks

manufactured by him, or on packages of butter, or other articles of merchandise, but this would not have constituted them trademarks.

Holding as we do that the trial court erred in its judgment herein, such judgment is reversed, and judgment is here rendered for appellant.

Reversed and rendered.

BRADY, J., not sitting.