### NORTH GERMAN LLOYD v. MEXICAN PETROLEUM CORPORATION OF LOUISIANA.

Circuit Court of Appeals, Fifth Circuit. January 26, 1928.

No. 5161.

Contracts ⬉10(3)—Agreement by libelant to ship "available" quantity of asphalt on each steamer of respondent "who agrees to load" held not contract enforceable against either party.

A writing, by which libelant, which produced asphalt, some of which it sold in this country and some of which it exported, agreed to ship for export all "available" asphalt for a period of 90 days on each steamer of respondent "who agrees to load," *held* not to constitute a contract enforceable against either party, since it did not obligate libelant to ship any quantity, nor respondent to designate any steamer.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Suit in admiralty by the Mexican Petroleum Corporation of Louisiana against the North German Lloyd. Decree for libelant, and respondent appeals. Reversed.

For opinion below, see 17 F.(2d) 113.

Charles Carroll, Joseph W. Carroll, and Richard B. Montgomery, all of New Orleans, La., for appellant.

Emile Godchaux, of New Orleans, La. (Milling, Godchaux, Saal & Milling, of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal by an ocean carrier of freight from a decree in admiralty awarding damages to a shipper of asphalt as for breach of contract of carriage. The controversy involves only a single shipment of 1,250 tons. The decree

was for the difference between the alleged contract rate of $4.50 per ton and the higher rate of $6.72 per ton, which the shipper was obliged to pay to another carrier. The question raised here is whether the trial court erred in refusing to dismiss the libel on the ground that the alleged contract between the parties was void for lack of mutuality. The material parts of that instrument read as follows:

"Shipper agrees to deliver all asphalt available for a period of ninety (90) days, beginning when the steamship Raimund is ready to load at Destrehan, to each steamer who agrees to load same, but shall not be obligated to load more than 1,500 tons per steamer, nor to shift to Destrehan for less than 1,000 tons."

"Delivery as required by steamer. Steamer to give shippers 15 days' notice of the expected date ready to load Destrehan, at which time shippers are to declare quantity."

Appellee, the Mexican Petroleum Corporation, had a large refinery near New Orleans at Destrehan, La. Asphalt was one of its by-products, a considerable part of which it exported to foreign ports, including Hamburg, Germany. Appellant, the North German Lloyd, maintained a regular line of steamers between New Orleans and German ports, and just prior to the execution of the contract in question had transported a number of appellee's shipments of asphalt to Hamburg. On June 23, 1926, appellee offered to deliver to appellant for transportation to Hamburg all asphalt "available" for a period of 90 days, but appellant replied that it would only agree to accept definitely stated amounts. Appellee refused to accept this counter proposition, the reason stated being that it did not know what its "requirements" would be. The final form of contract was agreed upon on June 29, but only after the insertion of the words "to each steamer who agrees to load same" in the first clause above quoted.

It is argued here by appellee that, after the contract was entered into, appellant agreed to transport the asphalt it shipped at the higher rate, and therefore was bound in the amount of the decree, regardless of the validity of the contract sued on; but the evidence is insufficient to support that view. The testimony goes no further than to show that after the contract was signed tentative discussions were had, in which appellee's agent insisted upon asphalt being taken on a named ship, and appellant's agent refused to assume the undertaking. The rights of the parties must therefore depend upon the validity of the formal written agreement.

The course of previous dealings between the parties, and the negotiations that led up to the execution of the contract in question were set out in the libel, and admitted by the court, at appellee's instance, as extrinsic evidence to explain any ambiguity there might be in the contract itself. The word "available," as used in the contract and unexplained, would seem to describe only such asphalt as appellee might thereafter decide to ship to Hamburg. All asphalt produced at appellee's refinery was not exported, but some of it was disposed of in this country, and of that exported all was not shipped to Hamburg. That word, as explained by the extrinsic evidence, is not shown to have the same meaning as the word "requirements," as is now contended; for it does not appear that appellee offered to ship all the asphalt it could sell to its customers in Hamburg. The question of appellee's requirements was not at any time the subject-matter of discussion. The quantity to be shipped depended entirely upon the uncontrolled future wish or desire of appellee. There was no method agreed upon by which it could be otherwise determined.

We are of opinion, also, aside from what has already been said, that appellant's agreement to carry was likewise unenforceable. There was no promise to take any ascertainable quantity, but only such as was delivered "to each steamer who agrees to load." That language was inserted after appellee refused to ship definite quantities. It did not contemplate that shipments would be made on every steamer of the steamship line. It is therefore clear from the context that a future agreement, which would bind some of the steamers less than the whole number in the fleet, was intended. The use of the present for the future tense is not uncommon, and cannot prevail against the manifest intention of the parties. We think it is clear that the words "to load" mean to carry or transport, and serve only to identify from time to time such steamers as might thereafter be designated by appellant.

Our conclusion is that the alleged contract is unenforceable, because its performance was made to depend upon the mere will of either party to it. The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.