## METRO–GOLDWYN–MAYER DISTRIBUTING CORPORATION v. HOME THEATRE CO.

### No. 5059.

Circuit Court of Appeals, Seventh Circuit.
May 25, 1934.

Rehearing Denied June 28, 1934.

Edward R. Johnston and Henry J. Brandt, both of Chicago, Ill., for appellant.

William M. Acton and Acton, Acton & Baldwin, all of Danville, Ill., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from the order of the District Court sustaining a demurrer to the special counts of an amended declaration.

Appellant sued to recover $15,000 damages from appellee, a motion picture exhibitor, for the breach of a contract licensing appellee to exhibit a number of copyrighted photoplays with accompanying sound devices. It is claimed appellee had agreed to exhibit and pay for them at prices fixed in the so-called "Standard Exhibition Contract." Appellee used and paid for a number of the photoplays and then refused to proceed further.

The declaration was amended several times. In its amended state it contained five special counts, substantially the same, each setting out in hæc verba the contract sued upon, which bears the title "Standard Exhibition Contract," and the common counts.

When the trial court sustained appellee's demurrer to the amended declaration as amended, appellant elected to stand by its declaration; whereupon the court entered judgment against appellant.

The demurrer is both general and special. The special causes relied upon are that the contract is not binding for want of mutuality of obligation; there was no notice of acceptance of the contract by appellant, by mail or telegram, as required by the terms thereof; there is no allegation that appellant complied with the conditions of the contract, in that there is no allegation that the photoplays for the use of which recovery is sought were ever available to the exhibitor, or that appellant ever gave notice of the availability, as required by the contract; there is no averment in either count of any demand for, or refusal of, arbitration, which, under the contract, must be resorted to before either party could avail itself of the process of any court; and that the contract is void.

There is no claim for any photoplays for which appellant had fixed available dates which were accepted and used by appellee. The action is limited to a recovery for photoplays which were never delivered to, or received or used, by appellee.

The contract is a lengthy document, covering many pages in the printed record. The first part thereof contains all of the general provisions and articles of the Standard Contract, to which is attached a schedule of pictures in contemplation, all of which is in the standard form of the organized motion picture industry which was agreed upon by the contract committee of the Motion Picture Trade Practice Conference in 1927.

After demurrer had been sustained to the amended declaration, leave was granted appellant to file an amendment to the amended declaration. In that amendment it was set out that the business of appellant at the time the contracts were entered into was the distribution of photoplays. For that purpose it maintained thirty-one branch offices throughout the United States and other offices in Canada; that each of these branches operate under terms and contracts identical in form to the one sued upon, and are engaged in the business of distributing pictures, picture films, etc., to theater owners and exhibitors located in the neighborhood of the several branches. It set out the general method of doing business and that its existence and income were dependent upon its continuance in business under the contract. It presumed to sell rights to exhibit pictures which appellant *expected* to distribute during the particular period involved; that the whole picture industry is the distribution of photoplays under contracts identical with the one sued upon, which photoplays or some part thereof must necessarily be released in the future; and in most cases upon their coming into existence, but which appellant fully

*expected* to release in the course of business; that the said photoplays mentioned in the several contracts were actually released and therefore made available to appellee. The demurrer was extended to the declaration as amended and again sustained.

The contract contains a provision: "Pictures to be played at the rate of one per week *if available* within 14 days after Chicago."

Article 8 provides the manner in which the license operates between the parties. The distributer is required to mail to the exhibitor "at least fifteen days' notice in writing of the date upon which each photoplay *will be available for exhibition by the Exhibitor,* consistent with prior runs and/or protection heretofore or hereafter granted to other exhibitors (which date is hereinafter referred to in the contract as the 'available date')."

It is provided that such notice shall be of no effect unless prints of such photoplays are in the exchange of the distributer from which the exhibitor is to be served. Within fourteen days after the mailing of such notice, it is provided, the exhibitor shall select an exhibition date or dates, within a thirty-day period commencing with such available date, by giving written notice to the distributer of the date, or dates, so selected.

The contract, as shown upon its face, is a mere license granted by the distributer to the exhibitor to use copyrights belonging presumably to the distributer or those with whom it is associated, if and when made. No charge is made for the general license except in connection with the price paid for each picture. It begins to operate when a photoplay is available for the exhibitor, the distributer being required to give the exhibitor at least fifteen days' notice in writing of the date upon which a photoplay will be available to him or it. In other words, the operation of the service is put in motion as to each photoplay by the distributer. Then the obligation of the exhibitor starts. If, in the judgment of the distributer, the dates selected by the exhibitor are not open for it, then, under that contingency, the situation falls into Classes A and B, and provides for the fixing of a date of exhibition. When the date is fixed the exhibitor is required to pay for the license as to each of such photoplays "the fixed sums herein specified at least three (3) days in advance of the date of shipment from the distributors' exchange or from the last previous exhibitor of the positive print thereof."

From what has been said in the foregoing statement concerning this contract, it will be seen that its operation, and therefore appellee's obligation, did not begin until, in the conduct of its business, appellant notified appellee in writing of an available date for a particular photoplay. Under its terms and provisions, if the available date was not given, then there was no obligation upon the part of appellee to take a picture, and had it so desired, there was no way by which it could compel appellant to fix an "available date" for any of the pictures mentioned in the several schedules.

On account of the effectiveness with which counsel for appellee argued this phase of the case, appellant sought to explain away the point by contending "the Exhibitor had until thirty days after the expiration date of this contract within which to elect to exhibit all of the photoplays, whether they were generally released or not, in which case the Distributor was obliged to permit the theatre owner to exhibit such plays *if they became available* within a period of two years after the contract expired." Even in this suggestion there is preserved the condition "if they became available" and the contract vests the discretion in the distributer as to when a photoplay is to become available to the exhibitor, or when the available date should be fixed. If, in the judgment of the distributer, any picture, or all of the pictures, covered by the contract were not available, then there was no obligation on the part of the distributer to furnish pictures or sound devices to the exhibitor. And if this discretion should be exercised by the distributer against giving the exhibitor any available dates, then the exhibitor had no recourse and the District Court properly held there was a lack of mutuality of obligation in the contract and consequently it is unenforceable as to the exhibitor.

In discussing the standard exhibition contract, Judge Thacher, of the Southern District of New York, enumerated a number of agreements which those engaged in trade and commerce might adopt in preparing proper instruments for the lawful conduct of trade without infringing the prohibitions of the Sherman Anti-Trust Act, § 1 (title 15, § 1, USCA), and then added this observation: "It is only when such agreements are sought to be imposed upon others, regardless of their wishes, by coercive combinations having the power to say 'Take what is offered or get nothing,' that they become illegal." United States v. Paramount Famous Lasky Corp. (D. C.) 34 F.(2d) 984, 989.

Under the contract, appellant says effec-

tively to appellee, take the available date we give you or get none.

There is no allegation in the declaration that after the distributer had given appellee an available date for any of the pictures in question, it refused to act and thereby became in default.

The effect of the holdings of the District Court in U. S. v. Paramount, etc., Corp., supra, and of the Supreme Court in Paramount, etc., Corp. v. U. S., 282 U. S. 30, 51 S. Ct. 42, 75 L. Ed. 145, is that the standard exhibition contract while containing an element which is repugnant to the Sherman Anti-Trust Act (title 15, §§ 1–7, 15 note, USCA), the remainder of the contract is separable and may be enforced. The Circuit Court of Appeals of the Fourth Circuit also adhered to this view in Paramount, etc., Corp. v. National Theatre Corporation, 49 F.(2d) 64.

It is unnecessary for us to discuss the other questions raised, as the contract is void for want of mutuality of obligation.

The District Court properly sustained appellee's demurrer to the declaration, and the judgment in favor of appellee is affirmed.