

THE ATTORNEY GENERAL

OF TEXAS

GERALD C. MANN

~~ATTORNEY GENERAL~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Tom Seay
County Attorney
Potter County
Amarillo, Texas

Dear Sir:

Opinion No. 0-3322

Re: Whether attached contract
for exclusive right of sale
of certain trademarked
merchandise by a Texas dis-
tributor in a limited territory
is in violation of the Anti-
Trust laws.

Pursuant to your request of March 8, 1941, we are submitting herewith our opinion on the question of whether the attached contract which provides for the exclusive distribution by an Amarillo hardware dealer in a certain limited territory of trademarked goods is in violation of the Anti-trust Laws of Texas.

Since the enactment of the first Anti-trust Law, the Appellate Courts of Texas have consistently construed it to forbid contracts providing for an exclusive dealership within a prescribed limited territory. This doctrine was first announced by Chief Justice Gaines in 1896 in the case of Texas Brewing Co. v. Templeman, 90 Tex 77, 38 S.W. 27, wherein the Supreme Court of Texas held that a contract between a brewery and a dealer of beer whereby the dealer was to handle no other beer than that of the brewery and the dealer was to be the exclusive dealer for said brewery was in violation of the Texas Anti-trust Laws. Chief Justice Gaines at page 28 stated:

"By the agreement the brewing company bound itself to give to Norwood and Company, the sole representation and sale of its products in and near the town of Navasota, and the latter placed themselves under the reciprocal obligation to sell no other beer than that of the company. The effect of the contract is evidently to create and 'carry out restrictions in trade' and 'to prevent competition' in the 'sale and purchase.' of ' commodities', namely beer and ice. Clearly, the act in question forbids such agreements."

In State v. Willys-Overland, Inc., 211 S.W. 609, (San Antonio

Court of Civil Appeals 1919) the Attorney General of Texas filed suit against the Willys-Overland Company alleging that its contract with its dealers in Texas was in violation of the Anti-trust Laws of Texas by virtue of the fact that the purpose and effect of said contract was to limit each dealer to his particular territory in that a dealer was required to pay one-half of his profit to the dealer in an adjoining territory, if he sold an automobile in such other dealer's territory, even though said contract did not in its terms expressly prohibit such dealer from selling outside of his own designated territory.  The court declared:

> "Whatever the motive may have been, in inserting such provision, it is evident it was designed to aid in enforcing the territorial restriction, and not for the purpose of granting by implication, the right to violate the plainly expressed intention to confine the distributor to the described territory."

The doctrine forbidding exclusive sale agencies announced by Chief Justice Gaines in the Templeman case was most forcibly reaffirmed by the Commission of Appeals in 1929 in Henderson Tire and Rubber Co. v. Roberts, 12 S.W. (2d) 154, wherein the court speaking through Judge Critz at page 155, said:

> "* * *said contract grants to L.E.Roberts and Co. the exclusive right to sell, during the term of the contract, Eclipse cord and fabric tires in certain defined and restricted territory in this state, and in consideration of the granting of the exclusive territory by the plaintiff, Roberts Company agreed to sell said Eclipse tires exclusively in said defined and restricted territory during the continuance of the contract, and said Roberts Company further agreed during the continuance of said contract not to sell, carry in stock, or advertise tires of any other manufacturer. As applied to an outright sale, such an agreement is a trust, and a conspiracy in restraint of trade, under the laws of this state."

The foregoing rule applies as well though the articles for which an exclusive dealership is sought to be given are covered by patents, copyrights or trademarks.  In 29 Texas Jurisprudence 768, we find the following statement:

> "On the other hand the owner of an article protected by a patent, copyright or trademark, when he has manufactured and sold the same, may not impose restrictions upon the buyer as to future sales.  When ownership is parted with, the article enters the channels of trade and is thereafter beyond the control of the pro-

prietor of the monopoly."

        In National Automatic Machine Company v. Smith, 32 S.W.
(2d) 678, The Austin Court of Civil Appeals had before it a contract
peculiarly similar to the one under consideration here. In that
case the National Automatic Machine Company had entered into a con-
tract with Smith whereby it granted to him the exclusive dealership
for sixty-two counties of certain coil operated boxing amusement devises
known as "K.O. Fighters". The contract was for a period of five years,
and the National Automatic Machine Company had applied for letters pa-
tent on the machines. The court declared said contract to be in viola-
tion of the Texas Anti-trust Laws. We quote at some length from the
opinion:

        "But appellant contends that since the contract shows
    it was assignee of patent rights to the merchandise sold to
    appellee, it had the right to make such restrictions, or to
    grant such exclusive rights to its vendee as it might
    see fit and proper, vendee agreeing thereto; and that such
    restrictions and rights granted were not in violation of
    the anti-trust laws of this state. In this contention ap-
    pellant relies upon the rule announced by this court in
    the case of Coca-Cola Co. v. State (Tex. Civ. App) 225
    S.W. 791, 793, that: 'The owner of a patent right, copy-
    right, or trade-mark, having exclusive right to manufacture
    and sell the article protected thereby, and being under no
    legal obligation to grant such right to another, may impose
    upon his assignee such restrictions as he may see proper,
    and to which his assignee will agree, including the price
    at which the article may be sold, the territory in which
    it may be manufactured and sold, the material that may be
    used in its manufacture, or in connection therewith.'

        "But that rule has no application to the contract
    here involved, because it does not relate to the patent
    right or to any merchandise sold in connection with the
    patent right, but relates to merchandise manufactured
    and actually sold under a pending patent which appellant
    asserted in the contract it is owner. The case is there-
    fore controlled by the further rule announced in the Coca-
    Cola Case that: 'The owner of an article protected by
    a patent, copyright, or trade-mark, when he has manufactured
    and sold the same, cannot impose restrictions upon his ven-
    dee as to the future sale of the same. Having parted with
    his ownership therein, it enters the channels of trade as
    an article of commerce, and is thereafter beyond his control.'

        "The distinction between these rules is clearly pointed
    out in the Coca-Cola Case and the authorities there cited,
    and needs no discussion here.

"Nor can appellant's contention be sustained that it appeared from the pleadings that the contract sued upon was one involving interstate commerce.  The contrary clearly appears, because the restrictions imposed apply to acts of the vendee in the sale of the merchandise after the interstate commerce transactions involved had been completed.  As above pointed out, the contract of purchase was completed when the merchandise was delivered to appellee, and no other interstate commerce transaction could have been involved under the terms of the contract.  Therefore the restrictions which applied to acts of appellee to be performed after all interstate commerce transactions ceased rendered the contract void as violative of the anti-trust laws of Texas. * * *."

See Also Rogers v. Westinghouse Electric Supply Co., (Dallas Court of Civil Appeals 1938) 116 S.W. (2d) 886, wherein the court declared, at page 888:

"Assuming that the icing unit, part of the equipment of the refrigerator, was a patented article and owned either by the Westinghouse Electric and Mfg. Co., or the Westinghouse Electric Supply Co., defendant herein, the dealer's contract in question contemplated an absolute sale of the article by the Manufacturing Company to the Supply Company, and by the Supply Company (defendant) to plaintiff, showing conclusively that, as the owner of the patented article parted with title, the doctrine invoked is not applicable, hence the attempt to prescribe restrictions as to territory, etc., is clearly within the condemnation of the anti-trust laws of the state.  This doctrine was announced in Coca Cola v. State, Tex. Civ. App., 225 S.W. 791;  National Automatic Mach. Co. v. Smith, 32 S.W. 678."

Under the foregoing authorities, we believe the conclusion is inescapable that the attached contract is in violation of the Texas Anti-trust Laws.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By:  Walter R. Koch    /s
     Walter R. Koch
     Assistant

WRK:RSm
ENCLOSURE

APPROVED MAR 28, 1941
Gerald C. Mann        /s
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion
Committee
By:  BWB
     Chairman