**PORTLAND GASOLINE CO. v. SUPERIOR MARKETING CO., Inc., et al.**

No. 6153.

*Court of Civil Appeals of Texas. Amarillo.*

April 23, 1951.

Rehearing Denied May 21, 1951.

Hazlewood & Richards, Amarillo, for appellant.

Adkins, Madden, Folley & Adkins and Gibson, Ochsner, Little, Harlan & Kinney, all of Amarillo, for appellees.

PITTS, Chief Justice.

This appeal is from an order of the trial court sustaining special exceptions to the pleadings of plaintiff which party refused to amend its pleadings and the trial court dismissed the case.

Appellant, Portland Gasoline Company, a corporation in the State of Delaware having a permit to do business in Texas, filed suit for damages in the sum of $50,838.77 by reason of alleged breach of two executory contracts by appellees, Superior Marketing Company, a corporation in the State of New Mexico, and Consolidated Gas and Equipment Company, a corporation in the State of Delaware, each appellee having a permit to do business in Texas. Appellees will hereafter be referred to as Superior and Consolidated as they were by the parties in their briefs. Appellees attacked the pleadings of appellant by special exceptions

alleging that the contracts sued on were void and unenforceable for lack of mutuality and that they were in restraint of trade, were contrary to public policy and violated the antitrust laws. Upon a hearing before the trial court appellees' special exceptions were sustained with the result above mentioned.

On March 18, 1947, appellant as first party entered into a written contract with appellee Superior as second party which contract recited that appellant was the owner of a natural gas processing plant near Pampa, Texas, where there was produced in varying quantities a mixture of butane and propane gases and liquids and that it was contemplated that appellant would produce "from its plant a liquid mixture of butane and propane in quantities exceeding ten thousand (10,000) gallons per day." The contract further recited that Superior was in the marketing business and had agreed with appellant to market all of the butane-propane mixture produced at the said plant. Thereafter the paragraphs of the said contract were consecutively numbered and we shall repeat here either in substance or verbatim only the portions of the contract needed to determine the issues here raised as was done by the parties in their respective briefs. Paragraph 1 recites in part as follows: "Second party (Superior) agrees that it will procure for its own account and at its sole and entire responsibility, purchasers for all of said butane-propane mixture produced at said plant for and during the period hereinafter specified, said second party to be free in the selection of purchasers of said product, and the collection of all sums from such purchasers for said product shall be the sole concern of second party." It further provides that deliveries of the product shall be made at the plant upon written orders of Superior with delivery slips signed by the purchasers and delivered by Superior to appellant on the 1st and 15th of each month with settlements made on the said dates in accordance with the agreed prices as provided for in paragraph 2. Paragraph 3 makes the following provisions: "First party (appellant) undertakes, promises and agrees to deliver for the account and on the

order of second party (Superior) each day during the existence of this contract, all of the net butane and propane mixture that it produces, and, in the event second party is unable to cause delivery of said production to be accepted each day as it is produced, then the first party shall store the same, at its own cost and expense, for not exceeding five days. And the second party undertakes, promises and agrees to cause delivery of said product to be accepted each day unless delivery is prevented by the weather or other unavoidable cause, and, if so prevented for a period of five days or less, the second party agrees to cause delivery of the accumulated storage to be accepted to the end that first party shall not be required to have storage capacity for more than five days' production." Paragraph 4 concerns the contents of the product, which is not material here. Paragraph 5 is as follows: "It is understood between the parties hereto that first party shall not be in default for failure to deliver on the order of second party 10,000 gallons per day of butane and propane mixture, provided the first party delivers on the order of second party in accordance with the terms of this contract its total net production of butane and propane mixture, and it is further agreed and understood that first party shall not be obligated to make such deliveries when its plant is shut down by strikes, lockouts, federal or state regulations, major calamity or any other cause beyond the control of first party." The life of the contract was from the date of its execution to October 1, 1949. Its other provisions are not material to the issues here presented.

Thereafter on June 17, 1947, the two appellees entered into a contract by which Superior assigned to Consolidated all of its rights acquired under the terms of its original contract with appellant. The first contract was fully incorporated within the terms of the second contract and made a part thereof. By the terms of the second contract appellee Consolidated agreed to perform or cause to be performed all of the terms agreed to by Superior under the provisions of the first or original contract. Therefore the issues or questions here to be determined depend upon a proper con-

struction of those provisions of the first or original contract heretofore set out either in substance or verbatim.

In its petition upon which it went to trial, appellant pleaded the terms in full of both of the contracts heretofore mentioned, but relied particularly upon the provisions of the original contract, alleging that appellee Superior agreed to procure for its own account and at its sole and entire responsibility purchasers for all of the butane-propane mixture produced by appellant at its said plant in question and to collect all sums for sales and account to appellant for the same. Appellant further alleged, in effect, that by reason of the latter contract executed by and between the two appellees, both appellees became obligated to appellant to procure purchasers for all of the butane-propane mixture produced by appellant at its said plant and to collect for all sales thereof; that in pursuance to the terms of the contracts appellant produced and delivered the products in question to appellees and they performed satisfactorily until on or about November 13, 1948; that appellees thereafter failed and refused to accept and pay for any more of appellant's said product to the total damage of $50,838.77 to appellant up to March 1, 1949, because of the losses it sustained as a result of appellees' refusal to accept and pay for any more of appellant's liquid gases in question from the said plant and appellant was compelled to cease operating its said plant for the period of time in question inasmuch as it had no other sale for its liquid gases since it had contracted with appellees for its total output of such gases and therefore had no other customers; that on or about March 1, 1949, appellant notified appellees that it had terminated the contracts in question by reason of appellees' refusal to comply with the terms of the same.

Appellees filed separate answers excepting, respectively, to appellant's petition based upon the contracts and particularly upon the terms of the original contract, on the grounds heretofore stated and urged first that the same lacked mutuality in that it purported to bind appellees, and particularly appellee Superior, to receive and find purchasers and markets for all of the net butane and propane mixture produced by appellant at its plant, but did not bind the appellant to produce any of such products. The trial court sustained such exceptions and dismissed the suit upon appellant's refusal to amend.

Whether a contract is void or unenforceable for want of mutuality must be determined by construing the contract and giving proper consideration to the language and expressions the parties have employed in executing the instrument. The contract must be construed as a whole and its various parts harmonized in so far as possible. Mutuality of contract consists in the obligation on each party to do, or to permit something to be done, in consideration of the act or promise of the other. Mutuality of obligation is an essential element of every enforceable contract. Mutuality is absent when one party only of the contracting parties is bound to perform and the rights of the parties exist at the option of one party only. 13 C.J. 331, Paragraph 179, 17 C.J.S., Contracts, § 100.

"An agreement for the sale of goods lacks mutuality and is invalid if the will or wish of one of the parties determines absolutely the quantity to be delivered and such party furnishes no sufficient consideration other than his promise to buy or sell such quantity of goods." 46 Am.Jur. 257, Paragraph 64.

"It has been broadly stated in some of the cases that to be valid and enforceable a contract must be mutual and binding upon both parties, and that a contract which is not obligatory on both is void for want of mutuality. Where there is no consideration except a promise for a promise, mutuality of obligation is essential, or, in other words, where mutual promises are the sole consideration for the contract. In such circumstances, unless both parties are bound by the terms of the contract, neither is bound by it so long as it remains executory, and it may be terminated at the will of either party." 10 Tex.Jur. 156, Paragraph 92.

The original contract reveals that appellant owned a natural gas processing plant and was producing a mixture of bu-

tane and propane gases and liquids in varying quantities estimated to exceed 10,000 gallons per day. Appellee Superior agreed to procure purchasers for all of the said mixture produced at the said plant, sell the same, collect for the sales and account to appellant on the 1st and 15th of each month for all of the sales. Paragraphs 3 and 5 of the contract have been heretofore copied verbatim. In paragraph 3 appellant undertook, promised and agreed to deliver for the account and on the order of appellee Superior each day during the existence of the contract "all of the net butane and propane mixtures that it produces * * *" An examination of paragraph 5 reveals that the language there used modifies appellant's former promise of undertakings set out in paragraph 3 by stating that appellant shall not be in default for failure to deliver to appellee Superior 10,000 gallons per day of the said gas mixture followed by indefinite provisions which failed to bind appellant for the delivery of any amount of the gas mixture as a daily output. An examination of the language used in the two paragraphs reveals no conflict or repugnancy, and none is claimed. But the language used in paragraph 5 modifies and reduces the implied binding effect of the language used in paragraph 3 until appellant has finally made no definite promise or agreement to deliver any amount of the said gas mixture. Under the terms of the two contracts, Consolidated's rights and obligations, if any, are the same as those of Superior, if any. It therefore appears that appellant is here seeking to bind appellees under the terms of contracts pleaded and relied on by it when the terms of the said contracts do not bind appellant. It is our opinion that there is a lack of mutuality in the terms of the contracts relied on for which reason the same are not enforceable. The trial court therefore properly sustained appellees' exceptions on the grounds of lack of mutuality and its judgment should be affirmed for that reason alone. National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979; Johnson v. Breckenridge-Stephens Title Co., Tex.Com.App., 257 S.W. 223; General Shoe Corporation v. Hall, Tex.Civ. App., 123 S.W.2d 721; Midland Steel Sales

Co. v. Waterloo Gasoline Engine Co., 8 Cir., 9 F.2d 250; North German Lloyd v. Mexican Petroleum Corporation of Louisiana, 5 Cir., 24 F.2d 46; Metro-Goldwyn-Mayer Distributing Corporation v. Home Theatre Co., 7 Cir., 71 F.2d 225.

Appellees further excepted to appellant's pleadings on the grounds that the contracts pleaded and particularly the original contract was illegal and void for the reason that it was in restraint of trade, was contrary to public policy and violated the antitrust laws of Texas. Such exceptions were likewise sustained by the trial court. Appellant charges that such action was error on the part of the trial court since the contract in question was not a sales contract but was a contract of agency and was not therefore in violation of the antitrust laws.

The terms of the contract do not specifically name appellant as a seller or appellee Superior as a buyer. Neither does it mention agency or principal or agent. Therefore in order to determine the nature of the contract, we must examine the language used in the entire contract to ascertain the rights granted and the duties imposed on either party thereto. The language of the whole contract makes it clear that appellee Superior was to procure purchasers, not for the account of appellant, but "for its own account and at its sole and entire responsibility." The collection of the purchase money was to be the sole concern and responsibility of appellee Superior and upon the 1st and 15th days of each month Superior was required to pay appellant for all of the butane-propane gas mixture delivered by appellant during the preceding 15-day period without regard to whether or not Superior had collected from its purchasers. These are elements of sale and not of agency. One of the usual essential elements of agency is that the principal retains the right to control the conduct of the agent or to have some voice at least with respect to matters entrusted to the agent. There is nothing in the contract in question to show any right of control by appellant over the conduct of Superior or any voice by appellant with respect to the matters entrusted to Superior other than appellant reserved the right to demand and receive

payment twice each month for products delivered. As a part of its alleged breach of contract appellant pleaded that appellees "failed and refused to accept and pay for any part of the output of liquified gases from the plant of plaintiff" after November 13, 1948, and further pleaded, in effect, that by reason of the contract Superior was the only customer appellant had for the product and it was unable to find other customers for a time after appellees refused to perform further under the terms of the contract. Such pleadings indicate that appellant considered the contract one of sale. A careful examination of the language used in the contract reveals that appellee Superior obligated itself to buy and pay for at a specified price all of the butane-propane mixture, produced by appellant, subject to the production limitations heretofore discussed. It appears to us that Superior is no more an agent for appellant than the usual wholesaler is the agent for a manufacturer which furnishes goods at a specified price for the business of the wholesaler or than the usual retailer is the agent of the wholesaler which furnishes goods at a specified price for the shelf of the retailer. A careful construction of the language used in the contract reveals to us that it was one of sale and not one of agency. Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S.W. 27; American Brewing Ass'n v. Woods, Tex.Com.App., 215 S.W. 448; Cunningham v. Frito Co., Tex.Civ.App., 198 S.W.2d 772.

Article 7428, Vernon's Ann.Civ.St., provides that:

"Either or any of the following acts shall constitute a conspiracy in restraint of trade:

"1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity, enter into an agreement or undertaking to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

The language of this statute was construed by the court in the case of Wood v. Texas Ice & Cold Storage Co., Tex.Civ. App., 171 S.W. 497. It was there held that a contract similar to the one being here considered violated Section 1 of Article 7798, which was identical with Section 1 of Article 7428, the present statute. The holding in the Wood case has since been many times cited with approval. Such holding was approved by the Supreme Court in the cases of Cox, Inc. v. Humble Oil & Refining Co., Tex.Com.App., 16 S.W.2d 285, and Twaddell v. H. O. Wooten Grocer Co., 130 Tex. 42, 106 S.W.2d 266; and by this court in the cases of Amarillo Oil Co. v. Ranch Creek Oil & Gas Co., 271 S.W. 145, and City of Crosbyton v. Texas-New Mexico Utilities Co., 157 S.W.2d 418. While these cases approve the rule referred to in the Wood case, it was held that such rule did not apply to the facts in these cases. In the Wood case it was held that the agreement to purchase all of the commodities in question from one person implied an agreement to buy exclusively from that person and no other during the period of the contract. In the case at bar we find the agreement of appellant to sell its entire output to appellee Superior was an implied agreement that appellant would sell exclusively to Superior and to no other during the term of the contract. The rule is the same in both cases since the court held in the Wood case that: "By the statute it is unlawful for two persons to agree that one of them will buy from the other exclusively of a given commodity as it is in like manner unlawful for one of them to agree to sell exclusively to the other a given commodity. It is unlawful to do either or both, and it is not necessary to do both in order to constitute the offense, and the reason therefor is the statute itself." [Tex.Civ.App., 171 S. W. 497.] In support of our holding we likewise cite Pennsylvania Rubber Co. v. McClain, Tex.Civ.App., 200 S.W. 586; Star Mill & Elevator Co. v. Ft. Worth Grain & Elevator Co., Tex.Civ.App., 146 S. W. 604 (writ refused); Jersey-Creme Co. v. McDaniel Bros. Bottling Co., Tex.Civ. App., 152 S.W. 1187 (writ refused); and Wright v. Southern Ice Co., Tex.Civ.App., 144 S.W.2d 933, writ refused, and other authorities there cited.

It is our opinion that the trial court properly sustained appellees' exceptions on the grounds that the contracts pleaded violated the provisions of Section 1, Article 7428, and were therefore void and not enforceable.

The record before us presents no reversible error. Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.