## JOHN H. SAUNDERS AND CLEMENT BOYREAU *v.* WILLIAM S. CLARK.

CONSTRUCTION OF WRITTEN CONTRACT.—Where any doubt exists as to the true meaning of a written contract, the conditions and motives of the contracting parties, as shown by its recitals, or by outside evidence, must be looked into to ascertain what was the real intention of the parties, which, when ascertained, must prevail over the literal sense.

MEANING OF WORDS OR PHRASES IN WRITTEN CONTRACT.—Where it is apparent that the parties to a written contract have attached to certain words or expressions a particular meaning in one part of a contract, it must be presumed, nothing appearing to the contrary, that the same meaning was intended wherever like words or expressions are subsequently used.

CONTRACT WITH TWO CONSTRUCTIONS.—Where a contract admits of two constructions, one of which nullifies the contract, and the other upholds it, the former must be discarded and the latter adopted.

PLAINTIFFS, who claimed as assignees of the contract, brought an action against defendant, who, by mesne conveyances, had acquired Baker's interest in the lot, to enforce the contract as a mortgage on the premises. Defendant demurred to the complaint; the demurrer was sustained, and plaintiffs declining to amend, judgment by default was rendered for defendant, and plaintiffs appealed.

The following was the contract on which suit was brought:

"THIS AGREEMENT, made and entered into this 23d day of August, A. D. 1853, by and between Jacob P. Leese, of the City and County of Monterey, in the State of California, and Gregory Yale, of the City of San Francisco, and State of California, of the parties of the first part, and George W. Baker, of the City and County of San Francisco, State of California, the party of the second part, witnesseth:

"WHEREAS, the said Jacob P. Leese, one of the said parties of the first part, together with one Salvador Vallejo, did obtain a grant of two one hundred vara lots, situated in the City of San Francisco, in the month of May, 1839, from Alvarado, then Governor of California, by petition, according to the forms of Mexican law, in such cases made and provided, said grant being now before the Board of Land Commissioners established by the Government of the United States for their adjudication; and, whereas, the said Leese has purchased by deed of conveyance all the right, title, and interest of the said Salvador Vallejo, in and to the said grant of land, said deed dated on or about the 3d day of August, A. D. 1850, and recorded in the office of the Recorder for the County of San Francisco, in Liber 15 of Deeds, p. 173; and, whereas, the said Leese has sold to the said Yale the one undivided interest of said two one hundred vara lots, as described in said grant, by deeds of conveyance, bearing date on the 22d day of August, 1853; and, whereas, the said parties of the first part are not now in the actual possession of said land described in said grant, but are now engaged in prosecuting their claim thereto for the said possession, and intend further to prosecute the same:

" *Now be it understood by these presents,* That the said parties of the first part have by deed of conveyance bargained, sold, released, remised, and conveyed unto the said party of the second part, all their right, title, and interest to a portion of said grant of lahd, being a full fifty vara lot on the corner of Broadway and Battery streets, and known and marked on the official map of the City of San Francisco as lot No. 327, as will more fully appear by reference being had to said deed, bearing even date herewith, for and in consideration of the sum of fifty thousand dollars, to be paid as follows, viz: The sum of five thousand ($5,000) dollars to be paid upon the execution and delivery of these presents, and the remaining sum of forty-five thousand ($45,000) dollars to be paid upon the recovery of the possession of said land, or in proportion to any part thereof, the said party of the second part having the privilege of retaining one half of the said sum of forty-five thousand dollars at one per cent interest per month in advance for the period of twelve months after recovery of said possession, if he should elect to do so.

" And the said party of the second part, for himself, his heirs, and assigns, covenants and agrees to pay to the said parties of the first part, or their assigns, the said sum of forty-five thousand dollars when they shall have legally recovered possession thereto, subject to the provisions aforesaid as to payment, provided said grant of land is so decided as to include the above described fifty vara lot number three hundred and twenty-seven, (327,) as described in said deed of conveyance.

" And it is further understood by the contracting parties, that this instrument of writing is not intended to act as a mortgage or lien upon the described premises, or any part thereof, before the recovery of the possession thereof, as herein provided ; that is to say, subject to the lien or mortgage for the payment of said sum of forty-five thousand dollars and interest thereon.

" In witness whereof, the aforesaid contracting parties have

hereunto set our hands and seals the day and year first before written.

"JACOB P. LEESE. [SEAL.]
"GREGORY YALE. [SEAL.]
"GEO. W. BAKER." [SEAL.]

*Saunders & Campbell*, and *J. B. Felton*, for Appellants.

*Clarke & Carpentier*, for Respondent.

By the Court, SANDERSON, C. J.

Under the construction which we put upon that portion of the agreement which specifies the conditions upon which the money was to become due and payable, it becomes unnecessary to determine whether the agreement was intended to operate as a mortgage or not; for, if as we hold, the money became due on the 3d of March, 1858, the date of the patent, and not on the 9th day of February, 1863, (the date at which possession of the land included in the patent, except lot No. 327, was recovered,) as claimed by counsel for the plaintiffs, the cause of action was barred by the Statute of Limitations before the suit was commenced. Hence our interpretation of the contract will be mainly confined to that portion which relates to the covenant on the part of the vendee (Baker) in regard to the payment of the forty-five thousand dollars therein specified, which is in the following language: "And the said party of the second part, for himself, his heirs and assigns, covenants and agrees to pay to the said parties of the first part, or their assigns, the said sum of forty-five thousand dollars, *when they shall have legally recovered possession thereto*, subject to the provisions aforesaid, as to payments, *provided said grant of land is so decided as to include the above described fifty vara lot number three hundred and forty-seven* (347) as described in said deed of conveyance." The words which we are called upon to interpret are in italics.

The paragraph immediately preceding the foregoing describes the subject matter of the contract, which is fifty vara lot No.

327, part of a Mexican grant for two one hundred vara lots, claimed by the parties of the first part, (Leese and Yale,) and also specifies that the forty-five thousand dollars in question is " *to be paid upon the recovery of the possession of said land, or in proportion to any part thereof.*" Obviously, according to grammatical usage, "fifty vara lot No. 327" is the antecedent of the word "thereto," used in the paragraph directly under consideration; and it is plain that the money in question was not to become due until the vendors had "recovered possession" of lot No. 327. But, independent of the rules of grammar, this relation is obvious from the nature of the transaction; for Baker acquired no interest in the grant except so far as lot No. 327 might be affected by it, and he could therefore have had no intelligible object in stipulating as a condition precedent to the payment of the money, for a "recovery of the possession" of any part of the grant other than that which he was purchasing. Moreover, he was not to pay the full sum unless the "recovery" included the entire lot; and if it included less than the entire lot, he was only to pay in proportion to the amount "recovered" which circumstance renders the relation in question still more apparent.

So much being established, it only remains to determine what is meant and intended by the parties when they speak of "the recovery of the possession of lot No. 327." In the text of the instrument this expression occurs three times, as follows:

First—"The remaining sum of forty-five thousand dollars to be paid upon *the recovery of the possession* of said land, or in proportion to any part thereof."

Second—"Said sum of forty-five thousand dollars" (is to be paid) "when they" (the vendors, Leese and Yale) "shall have legally recovered possession thereto" (lot No. 327), "provided said grant is so decided as to include" said lot.

And, lastly—"This instrument of writing is not intended to act as a mortgage or lien upon the described premises before the recovery of the possession thereof, as herein provided."

*Construction of a written agreement.*

Abstractly considered, the plain and obvious import of this language would be to the effect that the vendee was not to pay the purchase money, beyond the sum of five thousand dollars until the vendors had obtained the actual possession of the lot by an action upon their title brought expressly for that purpose. But we think it is clear from all the circumstances of the case that the language in question was not used in that sense. Where any doubt exists as to the true meaning of a written instrument, it must all be read together and in the light of surrounding circumstances. We must consult the condition and motives of the contracting parties as developed either by the recitals in the instrument if such there be, or by outside matters resting in evidence, for the purpose of ascertaining what was the real intention of the parties, which, when accurately ascertained, must always prevail over the literal sense of terms. (*The People* v. *Utica Insurance Company*, 15 John., 380; *Whitney* v. *Whitney*, 14 Mass. 92.) These circumstances are detailed in the complaint, which, for the purposes of our decision must be taken as true; for the question before us is presented upon demurrer. They are substantially as follows: Baker, the vendee, was in actual possession, *without any title whatever*. Leese and Yale, the vendors, were the owners and holders of a Mexican grant which they claimed to be valid, and which would, as they claimed, when confirmed and located, embrace the lot in question. This grant had been presented to the Board of Land Commissioners established by the Government of the United States for the purpose of adjudicating upon all such claims, and was still pending before them, undertermined. Their title, if they had any, was inchoate, and might or might not become perfect. Under these circumstances the parties meet, they of the first part to sell and he of the second part to buy. The vendee is willing to give five thousand dollars unconditionally, and to that extent take the chances. If, however, the title proves to be good, he is willing, upon that condition,

to give the further sum of forty-five thousand dollars.  The vendors accept the proposition, and thereupon they proceed to reduce their contract to writing, and now the question arises as to what shall be the test of the soundness of the title. For the purpose of defining the test the language in question is adopted.  What did they mean by it?  Under all the circumstances but two intents can be claimed.  One, that the vendors should recover actual possession by an action of ejectment founded upon their title; the other, that they were to prosecute their claim before the Board of Land Commissioners and obtain a patent from the Government of the United States which should include the lot in question or some part thereof. We cannot accept the first as the true intent, because it is an impossible intent, and would defeat and nullify the contract; for the vendors were to execute and deliver to the vendee a deed of the lot (thereby parting entirely with the title upon which they must have depended to recover possession) contemporaneously with the execution of the agreement in question, which would render a recovery of the possession in the sense under consideration a legal impossibility.  Hence, under well established rules of construction, this intent cannot be adopted. Where a contract admits of two constructions, one of which nullifies the contract and the other upholds it, the former must be discarded and the latter adopted; for there is no presumption against the validity of contracts, and it is not to be presumed that parties deliberately enter into an agreement which calls for an impossible condition or event as a test of performance.

Moreover, this agreement affords internal evidence in support of the latter intent.  Where it is apparent that the parties to a contract have attached to certain words or expressions a particular meaning, it must be presumed, nothing to the contrary appearing, that the same meaning was intended wherever like words or expressions are subsequently employed.

From the recitals found in the fore part of the instrument, it appears that the vendors are the owners and holders of a

Mexican grant for two one hundred vara lots in the City of San Francisco, which had already been presented to the Board of Land Commissioners and was then pending before them for adjudication, and, for aught that appears, that was the only action or legal proceeding touching the land in question then existing to which the vendors were parties. In a subsequent recital we find the following language : "And whereas, the said parties of the first part are not now in the actual possession of said land *described in said grant*, but are now engaged in prosecuting *their claim thereto for the said possession*, and intend *further* to prosecute the same."

While it must be admitted that the language here employed is far from being the most appropriate to an apt expression of the intent which we are compelled to accord to it, we think there can be no rational doubt as to what the true meaning of the passage is. They here speak of a claim for the possession which they are "*now*" engaged in prosecuting, and which they intend to "*further*" prosecute to a final result. This description, however inexact it may be, cannot possibly refer to any other action or proceeding than that then pending before the Board of Land Commissioners, for there was no other action pending at the time, and which they could intend to "further" prosecute. While that was not, in a strict sense, an action for the possession, yet they characterize it as such, and thereby indicate clearly what they mean when they speak of "recovering the possession of the land."

Again : In the last clause of the instrument we find the following expression. *   *   *   *   "Before the recovery of the possession thereof, *as herein provided*." Now there is no "recovery of the possession" provided for in the instrument, except such as might result from a confirmation of their claim by the Board of Land Commissioners and the procurement of a patent from the Government of the United States.

For the foregoing reasons, briefly stated, we think that the test of the soundness of the vendors' title agreed upon between the parties was to be a patent from the Government of the United States, and when that was obtained, the money was

to become due and payable. It follows that the money became due on the 3d of March, 1858, five years seven months and twenty-five days prior to the commencement of this action, and that an action therefor, whether the instrument be a mortgage or a mere personal obligation, cannot be maintained in the presence of the Statute of Limitations, which the defendant has called to his aid.

Judgment affirmed.