PORTLAND GASOLINE COMPANY V. SUPERIOR
MARKETING COMPANY, INCORPORATED, ET AL.

No. A-3257. Decided November 28, 1951.
(243 S. W., 2d Series, 823.)

534

*Hazelwood & Richards and Ray W. Richards*, all of Amarillo, for petitioner.

The Court of Civil Appeals erred in affirming the judgment of the trial court which sustaining the exceptions of the defendants which alleged that the contract was lacking in mutuality of obligation; was illegal and void because it was in restraint of trade and violated the public policy and laws of Texas by violating the antitrust provisions thereof. Loeb v. Winnsboro Cotton Mill Oil Co., 93 S. W. 515; Brawley v. United States, 96 U.S. 168, 24 L.Ed. 622; Arcola Sugar Mills Co. v. Farmer-Hamlett's Co., 220 S. W. 385.

*Adkins, Folley, Adkins & Hankins*, and *A. J. Folley*, for Superior Marketing Company, *Gibson, Ochsner, Little, Harlan,*

*& Kinney* and *S. Tom Morris,* for Consolidated Gas & Equipment Co., all of Amarillo, for resepondents.

In support of their contention that the contracts were void, cited W. T. Rawleigh Co. v. Gober, 3 S.W. 2d 845; Gordon v. Emerson Shoe Co. 242 S. W. 791; Midland Steel Sales Co. v. Waterloo Gasoline Engine Co., 9 Fed. 2d 250.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Petitioner, Portland Gasoline Company, hereinafter referred to as Portland, filed suit in a District Court of Potter County, Texas, against the respondent Superior Marketing Company, Inc., hereinafter referred to as Superior, and Consolidated Gas and Equipment Company, hereinafter referred to as Consolidated, for damages by virtue of the failure and refusal of the respondents to carry out a contract which Portland originally made with Superior, and which Superior had assigned to Consolidated by a contract whereby Consolidated assumed the obligations of Superior. Respondents answered by special exceptions (1) that the contract was void for lack of mutuality and (2) that the contract violated Article 7428, Revised Civil Statutes of Texas, 1925, more generally known as the Anti-Trust Act. The trial court sustained the exceptions and upon Portland's refusal to amend, dismissed the suit. On appeal this judgment was affirmed by the Court of Civil Appeals. 240 S.W. 2d 346.

It is not necessary to copy the contract in full and we will summarize the provisions, except where it is necessary to copy verbatim from the contract, in order to understand the questions of law involved and our holdings thereon.

■ "Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. In the transactions of business life, sanity of end and aim is at least a presumption, though a rebuttable one. A reasonable interpretation will be preferred to one which is unreasonable. When the evidence of the agreement furnished by the contract itself is not plain and unmistakable, but is open to more than one meaning as compared with the other and the probability that men in the circumstances of the parties would enter into one agreement or the other are competent for consideration on the question as to what the agreement was which the written contract established." 12 Am. Jur. 791, Contracts, Sec. 250.

"An agreement should, moreover, be construed in such a way

as to make the obligations imposed by its terms mutually binding upon the parties, unless such interpretation is wholly negatived by the language used. This rule is based on the presumption that when parties make an instrument, the intention is that it shall be effectual, and not nugatory. A meaning which is sufficiently definite will be favored. The terms of a contract must, if possible, be construed to mean something rather than nothing at all." 12 Am. Jur. 794-795, Contracts, Sec. 251.

See also City of El Campo v. South Texas Nat. Bank of San Antonio, et al, 240 S.W. 2d 252, 256:

"Under well-recognized principles of law, the construction of the contract urged by appellees must be rejected if there be some reasonable construction of the contract which would render it valid and enforcible. 'It is not to be presumed that the parties intended that an impossible thing should be done,' or 'that the parties deliberately entered into an agreement calling for an impossible condition or event as a test of performance.' 17 C. J. S., Contracts, Sec. 318, note page 739. 'A construction which renders performance of the contract possible will be adopted, rather than one which renders its performance impossible or meaningless, unless the latter construction is absolutely necessary; and it has been held that no matter how clear the ordinary significance of the words, they must not be given a meaning which, when applied to the subject matter of the contract, will render performance impossible.' 17 C. J. S., Contracts, Sec. 318, p. 738. See also Magnolia Petroleum Co. v. Stroud, Tex. Civ. App., 3 S. W. 2d 462, 465; Saunders v. Clark, 29 Cal. 299, 300, 306; Danley v. Merced Irrigation Dist., 76 Cal. App. 52, 243 P. 676, 678; 12 Am. Jur. 793, Sec. 251."

"Mutuality may result from an implied obligaton on the part of one of the parties. Though a contract on its face and by its express terms may appear to be obligatory on one party only, if it is manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such a corresponding and correlative obligation will be implied, and the contract held to be mutual,—as where the act to be done by the party expressly binding himself can only be done upon a corresponding act being done or allowed by the other party." 10 Tex. Jur., 161, Contracts, Sec. 95.

"It was held in an early Minnesota case that an agreement to sell all that the buyer might require or want in his business

was open to the same objection, though the buyer promised to buy all he should require; but the weight of authority is clearly and rightly otherwise, whether the mutual promises are to buy and sell all that the buyer requires or all that the seller produces. Though it may be true that a seller by ceasing to manufacture may relieve himself from any performance and still keep a promise to sell all the goods that he manufacturers, and similarly a buyer by going out of business may avoid performance while still observing the terms of an agreement to buy all that he requires, these results can be obtained only by conduct of the promisor which is in itself a legal detriment, namely, the cessation of business." Williston on Sales, Rev. Ed., 740-741, Obligations of Delivery and Payment, Sec. 464a.

"It was held in an early Minnesota case that a bargain to sell all that the buyer might require or want in his business lacked consideration, as it left the performance optional, though the buyer promised to buy all he should require; but the weight of authority is clearly otherwise, whether the buyer agrees to buy all that he requires or the seller agrees to sell all that he produces, and rightly." Williston on Contracts, Rev. Ed., Vol. 1, 353, Consideration, Sec. 104A.

"A third class of cases, not wholly inconsistent with the first, finds from the business situation, from the conduct of the parties, and from the startling disproportionate burden otherwise cast upon one of them, a promise implied in fact by the seller to continue in good faith production or sales, or on the part of the buyer to maintain his business or plant as a going concern and to take its bona fide requirements. In other words, this view implies an obligation to carry out the contract in the way anticipated, and not for purposes of speculation to the injury of the other party, but recognizes that either party may in good faith cease to have such output or requirement." Id., 357-359.

See also Section 158, et seq., Corbin on Contracts, Vol. 1, 522; 14 A. L. R., Annotation II, p. 1303; 24 A. L. R., Annotation II, p. 1352; 74 A. L. R., Annotation II, p. 476; Page on the Law of Contracts, pp. 981-989, Consideration, Sections 580-582.

In Loeb v. Winnsboro Cotton Oil Co., (Tex. Civ. App., 1906), 93 S.W. 515, writ denied, the validity and binding effect of an agreement to take the output of linters from the Cotton Oil Company for the season 1904-1905 was upheld.

Cox, Inc., v. Humble Oil & Refining Co. (Com. App., 1929) 16 S.W. 2d 285, held that a contract whereby Cox agreed that it *"would purchase* all gasoline to be used by plaintiff, (Cox) in its business of operating a filling station on the following terms," etc., was not void for want of mutuality, because the buyer did not agree to take any definite amount of gasoline.

In Bowen v. Virginia Lee Candies, Inc., (Tex. Civ. App., 1931), 44 S.W. 2d 502, no writ history, the candy company made a contract with Bowen whereby it agreed to furnish certain trade fixtures, show cases, trays, etc., to Bowen and he agreed to buy candies from the company in a specified amount each month, it was held that the contract was not void and unenforcible for want of mutuality, there being no specific agreement on the part of the candy company to furnish any candy. The court held "mutuality results from the implied obligation, as appears from the face of the agreement, on the part of the appellee (candy company) to supply to appellant (Bowen) each month the quantity of candy, in the minimum amount specified and at the prices specified, which were ascertainable. * * * Mutuality may result from an implied obligation on the part of one of the contracting parties. 10 Tex. Jur., Sec. 95, 13 C. J., Sec. 521, p. 558."

The contract between Portland and Superior, dated March 18, 1947, starts off with a preamble which, among other things, states that Portland owns a natural gas processing plant near Pampa, Texas, and there "is produced in varying quantities a mixture of butane and propane gases and liquids" and it is contemplated between the parties that such production will exceed 10,000 gallons per day; that Superior is in the marketing business and has agreed with Portland "to market all the said butane-propane mixture produced at said plant" under the terms and conditions of the contract later set out; that for $1.00 and mutual covenants, agreements, and conditions being performed by each of the parties, they agree as follows (setting out the contract).

In paragraph 1, Superior agrees to procure "purchasers for all of said butane-propane mixture produced at said plant", and to collect for all sales. In paragraph 2, Superior agrees to pay Portland on the first and fifteenth day of each month following the effective date of the contract·for all the mixture delivered during the preceding fifteen day period a price to be determined as set out in said paragraph. In paragraph 3 Portland promises and agrees to deliver to Superior for the

account and on order of Superior each day during the existence of the contract, "all of the net butane and propane mixture that it produces." There is a provision that gives Superior five days in which to sell the mixture; but at the end of the five day period Superior must take delivery of the accumulated storage. Paragraph 4 has to do with the content of the mixture. Paragraph 5 is as follows:

"5. It is understood between the parties hereto that first party shall not be in default for failure to deliver on the order of second party 10,000 gallons per day of butane and propane mixture, *provided the first party* (Portland) *delivers on the order of second party* (Superior) *in accordance with the terms of this contract its total net production of butane and propane mixture*, and it is further agreed and understood that first party shall not be obligated to make such deliveries when its plant is shut down by strikes, lockouts, federal or state regulations, major calamity or any other cause beyond the control of first party." (Emphasis added).

Paragraph 6 provides that Portland may cancel the contract by giving ten days notice in writing of cancellation, and if Superior has not corrected the default within such period, the contract may be cancelled. Paragraph 7 provides the term of the contract shall be from its date to October 1, 1949. Paragraph 8 deals with the situation in the event Portland produces liquified propane gas, in addition to the mixture covered by the contract. Paragraph 9 takes care of any taxes due on the mixture covered by the contract. Paragraph 10 makes the agreement binding upon the "parties hereto, their successors and assigns." The attestation clause and signature close the contract.

It is claimed by respondents that Paragraph 5 qualifies the contract so as to take it out of the "output" cases, and causes the contract to be void for want of mutuality in that it leaves the delivery of any product to the "will or wish" of Portland, and is therefore void and unenforcible.

■ We think the authorities cited above clearly show that in this contract there was the implied promise of Portland to manufacture and deliver the mixture to Superior and its assignee, Consolidated. Clement v. Producers' Refining Co., (Com. App., 1925) 277 S.W. 634, 17 C. J. S. 448, Contracts, Sec. 100b. To construe the contract otherwise would be to hold that the parties made and entered into a contract that accomplished nothing. A reading of the contract, we think, conclusively demonstrates that it was in contemplation of all parties that

Portland would and must in all good faith manufacture and deliver the mixture covered by the contract. If Portland did not manufacture and deliver, Superior, et al could not take and sell the product. The only way Superior, et al could comply with their part of the contract was for Portland to manufacture and deliver the product covered by the contract. We, therefore, hold that the contract was not void for want of mutuality.

■ This brings us to a consideration of the question as to whether or not the contract violates the Anti-Trust Act, or specifically Article 7428, Revised Civil Statutes, 1925.

There is no provision in the contract which covers any product other than that produced at the Pampa plant. There is nothing which prevents Portland from selling any other production of this same mixture to any or all persons who desired to purchase. Neither does the contract bind Superior to buy this mixture from none other than Portland. On the contrary, the contract in its preamble expressly recognizes that Superior is in the marketing business, thus by implication recognizing that Superior is buying this same product from other producers.

The case of Cox, Inc. v. Humble Oil & Refining Co., supra, holds that a contract whereby a party agrees to purchase from a refiner and distributor all of the gasoline used by the purchaser in the operation of a particular filling station, did not constitute a conspiracy in restraint of trade. In the case of Jones Inv. Co. v. Great A. & P. Tea Co., (Com. App., 1933), 65 S.W. 2d 495, the tea company agreed with the investment company to purchase from the investment company all of the ice needed by the tea company during the year 1927 for refrigeration purposes in all of its stores in the City of Dallas, Texas, excluding those in Oak Cliff. This contract was held not in restraint of trade, and therefore did not violate Section 1 of Article 7428, Revised Civil Statutes, 1925. In the case of Twaddell v. H. O. Wooten Grocer Co., (Com. App., 1937), 130 Texas 42, 106 S.W. 2d 266, this court held that a contract whereby Twaddell agreed to buy all of the "dry groceries" from Wooten, and "to discontinue specialty orders" from all other suppliers during the period of one year, or so long as membership in the Red & White Stores organization continued, was not in violation of the Anti-Trust Act (Article 7428, Section 1, Revised Civil Statutes, 1925). In the case of Ford Motor Co. v. State, (1943), 142 Texas 5, 175 S.W. 2d 230, 1. c. 234, this court held:

"We think that the contract provisions as above detailed by us, on their faces, do not violate our anti-trust laws. There is

nothing in such laws that requires a manufacturer to sell its manufactured product to any dealer or purchaser who wishes to buy same. To the contrary, such manufacturer may sell, or refuse to sell, at its pleasure."

In 58 C. J. S., 1932, Monopolies, Section 52, it is stated:

"At common law, it has been held, a contract by which a manufacturer agrees to sell all goods or products manufactured or produced by him to one person or corporation is not unlawful as in restraint of trade or as creating or tending to create a monopoly, in the absence of allegation or proof to show that these conditions will result."

We therefore hold that this contract does not violate Article 7428, Revised Civil Statutes, 1925, and that it is not a contract in restraint of trade.

The judgments of both courts below are hereby reversed, and this cause is remanded to the trial court for further proceedings consistent with our holdings herein.

Associate Justice Garwood not sitting.

Opinion delivered November 28, 1951.