CAR WASH SYSTEMS OF TEXAS, INC, Appellant,

v.

David E. BRIGANCE, Appellee.

No. 2–93–085–CV.

Court of Appeals of Texas, Fort Worth.

July 6, 1993.

Bush, Fulton, Hurlbut & Morrison, P.C., Peter H. Fulton and Robert L. Russell Bush, Arlington, for appellant.

Hesse & Jones, P.C., Kevin T. White and Edward W. Roush, Jr., Dallas, for appellee.

Before HILL, C.J., and DAY and FARRAR, JJ.

## OPINION

DAY, Justice.

Car Wash Systems of Texas, Inc. appeals from the trial court's denial of a temporary injunction against its former employee, David E. Brigance. We reverse and remand to the trial court for the entry of appropriate injunctive relief.

Car Wash Systems hired Brigance in 1984. On February 20, 1987, Brigance signed an Employment Agreement (the

Agreement), which changed his status from an employee at will to an employee dischargeable only for cause. The Agreement contained both non-compete and non-disclosure covenants. On November 2, 1992, Brigance, without prior notice, resigned from Car Wash Systems and immediately began working for a competing business, Ultimate Car Wash Systems, Inc. (Ultimate).

Car Wash Systems sued Brigance, seeking injunctive relief and damages, alleging both violation of the non-compete agreement and breach of Brigance's duty of loyalty and good faith to his employer. The trial court issued a temporary restraining order which was extended by agreement of the parties until the evidentiary hearing on the temporary injunction. After the evidentiary hearing, the trial court denied the application for temporary injunction by entry of the following order:

On March 4, 1993, came on to be heard the plaintiff's application for temporary injunction. The parties appeared by and through counsel, and testimony and evidence was received. After considering the evidence, briefs and arguments of counsel, the Court determines as follows:

(1) that plaintiff has a common law cause of action against the defendant for damages for breach of his common law duty towards his employer;

(2) this duty ceases upon the cessation of employment and will not support an injunction;

(3) the employment contract between the plaintiff and defendant contains a non-competition clause; and, there is some evidence that this was supported by consideration;

(4) this clause is limited in duration to one year following cessation of employment, which is a reasonable period;

(5) this clause is not limited in geographic extent;

(6) the "employment period" called for in the contract was one year unless extended as provided in the contract;

(7) there is no extraneous evidence of an extension of the *contract*, although it is apparent that the defendant continued to work for plaintiff after the expiration of the "employment period"; [Emphasis in original.]

(8) any such extension of the contract would have to be inferred from the words and conduct of the parties, and that evidence is insufficient at this point to support findings which would justify an injunction;

(9) the Court therefore cannot conclude that there is a reasonable basis to believe that the contract was extended by words and acts which operated to waive the language of the agreement that amendments and the like would have to be in writing in order to be binding;

(10) without such a determination the Court cannot conclude that plaintiff has a probable right subject to an immediate irreparable injury.

It is therefore ORDERED that the application for temporary injunction be and it is hereby DENIED without prejudice to plaintiff's claims for damages and for permanent injunctive relief upon a trial on the merits.

Signed this 26th day of March 1993. The trial court designated the above order as its Findings of Fact and Conclusions of Law.

Car Wash Systems assigns as error the trial court's holdings: (1) that Brigance's breach of his duty of loyalty and good faith to his employer ceased upon the termination of his employment and therefore would not support temporary injunctive relief, and (2) that the non-compete provisions of the Employment Agreement were unenforceable since the Agreement had not been extended beyond its initial one-year term.

*The Evidence*

The evidence at the hearing for temporary injunction was essentially undisputed. Car Wash Systems was founded in 1980 and is owned by William Apperson. Apperson is 58 years of age and in poor health. Over the years Car Wash Systems had developed a substantial group of customers for whom it had constructed car washes

and to which it sold parts, equipment, supplies, and repair services. Because of the economy and competition, Car Wash Systems lost money in 1990 and 1991. In 1992 it was enjoying a profitable year and it had been successful in consolidating its bank debt.

After working for Car Wash Systems for several years as an at will employee, Brigance executed the Agreement. After signing the Agreement, Brigance became the Service Manager who could be terminated "for cause" only. Once the Agreement was signed, Car Wash Systems considered Brigance to be a key employee, and he was given access to information that was considered proprietary and confidential. The servicing of car wash equipment and facilities is a specialty area that requires prior knowledge, experience, and training. The routing books used by Car Wash Systems servicemen containing the names and locations of customers are marked proprietary and confidential. Car Wash Systems maintains a customer list, which Brigance acknowledged is used on an "as-needed or need-to-know basis by people filling orders."

Brigance admitted that before his sudden resignation on November 2, 1992, he talked to customers of Car Wash Systems about buying supplies from him when he went into business on his own; he told customers of Car Wash Systems the company was having financial problems; he contacted suppliers of Car Wash Systems about going into business for himself; and he did not feel he owed Car Wash Systems a duty of loyalty while he was employed. Brigance further admitted referring two customers of Car Wash Systems to Ultimate while he was still employed by Car Wash Systems.

Ultimate, Brigance's present employer, competes directly with Car Wash Systems in the construction and repair of car washes and the sale of equipment and supplies to car washes. In 1992 Car Wash Systems had constructed a car wash for Allen Anderson. When Brigance became acquainted with Anderson, the two of them decided to form Ultimate, structuring it so that Anderson would be the financial backer and Brigance would run Ultimate and become a stockholder after three years.

Brigance admitted that after resigning from Car Wash Systems on November 2, 1992, he took orders from eleven Car Wash Systems' customers for Ultimate. These eleven customers had done approximately $400,000 worth of business with Car Wash Systems in 1992. Brigance further admitted that he learned the name of Car Wash Systems' new construction prospect, Steve Andre, while still employed at Car Wash Systems. Brigance gave the name of this prospect to Anderson and then contacted Andre to solicit the construction for Ultimate. Brigance admitted that a new prospect for the construction of a car wash is very difficult to find and a real prize.

Car Wash Systems' owner, William Apperson, testified that if Brigance is permitted to compete with Car Wash Systems and keep the customers who are former Car Wash Systems customers, it will jeopardize Car Wash Systems' ability to repay its bank debt and probably put his company out of business. Car Wash Systems has six employees who in turn have thirteen dependents. Brigance, who is married and has three children, admitted that if he were required to, he could wait for a year and work at some job that does not compete with Car Wash Systems. Approximately seventy percent of Car Wash Systems' customers are located within a 300 mile radius of Fort Worth, Texas.

### The Agreement

The controlling provisions of the Agreement are contained in the following paragraphs:

2. *Term of Employment Agreement.* The term of employment hereunder shall be for a period beginning as of the date hereof, and ending one (1) year thereafter, unless expressly extended as provided herein and until such employment hereunder shall have been terminated as hereinafter provided. The period of EMPLOYEE'S employment under this Agreement is called the "Employment Period."

. . . .

7. *Termination.* The Employment Period shall terminate one (1) year from the date hereof unless extended thereafter from year to year or otherwise as may be agreed to by EMPLOYEE and approved by EMPLOYER. Notwithstanding any other provisions of this Agreement, (a) EMPLOYER shall have the right to terminate this Agreement at any time for cause upon written notice to EMPLOYEE and, upon the giving of such notice, employment hereunder shall be terminated, and (b) in the event of the death of EMPLOYEE, this Agreement shall terminate as of the date of his death, and his estate will be entitled to receive any unpaid salary accrued hereunder to such date. The term "cause" for the purposes of this Agreement, shall mean dishonesty, offenses involving moral turpitude, failure to obey orders of superiors or willful misconduct of the EMPLOYEE in connection with the performance of his duties.

. . . .

10. *Covenant Not to Compete.* EMPLOYEE hereby agrees that for a period of one (1) year after the date of his employment by EMPLOYER has terminated (the "termination date"), he will not, directly or indirectly, engage in any business (whether as a proprietor, partner, joint venturer, employer, agent, employee, consultant, officer, beneficial or record owner of any of the stock of any corporation, or beneficial owner of any interest in any association) which is competitive in any respect with the business in which the EMPLOYER is involved on the termination date within the State of Texas or, in any other state in the United States in which the EMPLOYER is engaged in such business on the termination date.

It is the desire and intent of the parties to this Agreement that the terms and provisions of this Section 10 be enforced to the fullest extent permissible under the law and public policy applied by any jurisdiction in which enforcement is sought. Accordingly, if, and to the extent that, any portion of this Section 10 shall be adjudicated to be invalid or unenforceable, this Section 10 shall be deemed amended to delete therefrom or reform the portion thus adjudicated to be invalid or unenforceable, such deletion or reformation to apply only with respect to the operation of this Section 10 in the particular jurisdiction in which such adjudication is made.

. . . .

13. *Non–Disclosure.* EMPLOYEE agrees that, while he is employed by the EMPLOYER and at all times thereafter, he will not disclose to persons other than employees or EMPLOYER, and will not himself directly or indirectly use, or allow to be used, any confidential information or trade secrets of EMPLOYER, regardless of whether the confidential information or trade secrets have been conceived or developed, in whole or in part, by EMPLOYEE or others.

. . . .

16. *Amendment.* No variation hereof shall be deemed valid unless in writing and signed by the parties hereto, and no discharge of the terms hereof shall be deemed valid unless by full performance by the parties hereto or by a writing signed by the parties hereto.

### *Standard of Review*

 Because an appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, the merits of the movant's case are not presented for appellate review. *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ). Our review is strictly limited to whether the trial court clearly abused its discretion. *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981). An abuse of discretion occurs when the trial court misapplies the law to established facts or when the evidence does not reasonably support the conclusion that the applicant has a right to recovery. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Manufacturers Hanover,* 819 S.W.2d at 610.

*Holding*

Following the above standard of review, we find that the trial court erred in construing the Agreement. The trial court determined that the *employment period* terminated one year from the date the Agreement was executed on February 20, 1987, because there was no written extension of the Agreement, and it was not renewed at the end of the first year. In arriving at this conclusion, the trial court relied upon a paragraph of the Agreement requiring any *variations* of the Agreement to be in writing and signed by the parties:

> 16. *Amendment.* No *variation* hereof shall be deemed valid unless in writing and signed by the parties hereto, and no discharge of the terms hereof shall be deemed valid unless by full performance by the parties hereto or by a writing signed by the parties hereto. [Emphasis added.]

The trial court reasoned that since no additional writing was ever signed by the parties, the Agreement ended at the expiration of the one-year term specified in paragraph 2. The trial court reasoned that since the Agreement terminated after the completion of the one-year term, the one-year covenant tacked on to the end of the employment period had long since expired. We disagree.

■ The terms of a contract must be construed, if possible, to mean something rather than nothing. *Portland Gasoline Co. v. Superior Mktg. Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (Tex.1951). The parties to a contract cannot be presumed to have deliberately entered into an agreement calling for an impossible condition or event as a test of performance. *Id.* 243 S.W.2d at 825.

■ To be enforceable, a contractual covenant not to compete:

(1) Must be ancillary to an otherwise valid transaction or relationship;

(2) The restraint created by the covenant not to compete must not be greater than is necessary to protect the promisee's legitimate interests (such as business goodwill, trade secrets or other confidential or proprietary information) and

must be appropriate in terms of time, territory and type of activity; and

(3) The promisee's need for protection must not be outweighed by either hardship to the promisor or injury likely to the public.

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681–82 (Tex.1990) (opinion on reh'g), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); Tex.Bus. & Com. Code Ann. § 15.50(1) & (2) (Vernon Supp. 1993)

■ As we view the Agreement, it provides for a single year of employment which could only be terminated by the employer for cause. At the end of the employment period, the employer had the option to extend the Agreement for another year or to simply fail to extend. The Agreement requires no formality in order for the extension to take place. If, on the anniversary date of the "term of employment," the employee remains on the job and the employer continues to employ him, the term of employment is extended for another year, since the Agreement states the employment period shall terminate one year from the date of the Agreement unless extended thereafter from year-to-year or otherwise as agreed upon by the parties. Thus the employee has job security for a full year after the anniversary date of the Agreement, and the employer has the option of keeping the employee for another year during which termination can only be on a "good cause" basis. At the time Brigance quit on November 2, 1992, the Agreement was still in full force, having been extended by the acts of Brigance and Car Wash Systems on the previous anniversary date.

We hold that it is clear that Brigance's agreement not to compete extends for one year after his employment by Car Wash Systems has terminated, not one year after the *employment period* terminates. To hold otherwise would cause the non-compete period to have run from February 20, 1988 to February 20, 1989, while Brigance *was still employed full time by Car Wash Systems.*

■ The virtually undisputed evidence clearly establishes the enforceability of the covenant in question under the above parameters. Since the evidence also clearly established probable right and irreparable injury, the employer was entitled to injunctive relief. The trial court is directed to enter a temporary injunction in accordance with this opinion.

HILL, C.J., concurs and dissents.

HILL, Chief Justice, concurring and dissenting.

I respectfully concur in part and dissent in part. I dissent with respect to the majority's conclusion concerning enforcement of the non-competition agreement because I would hold that the trial court's determination that the non-competition agreement was no longer in effect at the time of Brigance's termination does not constitute an abuse of discretion.

That determination, based upon the contract and the evidence presented, as to whether the employment agreement was still in effect at the time Brigance left Car Wash's employment, is a difficult question of law and fact in which the full evidence has yet to be developed at final hearing on the merits. Our determination of that issue in a manner contrary to that of the trial court constitutes a premature decision of the merits of this case and beyond the permissible scope of our review. *See Keystone Life Ins. v. Marketing Mgt.*, 687 S.W.2d 89, 92 (Tex.App.—Dallas 1985, no writ).

The majority assumes that the one-year employment period contemplated by the employment agreement was extended as a matter of law because Brigance continued to be employed at Car Wash after the one year period had expired. It cites no authority for its conclusion. It does state that the agreement requires no formality in order for the extension to take place. I would note that paragraph 2 of the agreement states that the term of employment under the agreement ends one year later "unless expressly extended as provided herein...." The majority has not referred us to any evidence showing that the agree-

ment was "expressly extended." Viewing the agreement as a whole, I would not consider it an abuse of discretion for the trial court to determine that Car Wash, as the author of the agreement, intended that the contract would not be extended absent "an express agreement" between it and Brigance to that effect. At best, here we have only an implied agreement to extend that would seem not to meet the requirements for an extension of the employment term as set forth in the agreement.

I believe that it would also not be an abuse of discretion for the trial court to have determined that if the agreement were no longer in effect that Brigance could have been discharged without cause and that the non-competition agreement was no longer in effect. I would overrule point of error number two and affirm the trial court's order denying the temporary injunction enforcing the non-competition agreement. I otherwise concur in the majority's decision.