**Affirmed and Memorandum Opinion filed June 4, 2026.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-25-00050-CV

---

**ELITE CONCEPTS, INC., Appellant**

**V.**

**DAVID FIELD AND BRIA FIELD, Appellees**

---

### On Appeal from the 471st Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 471-05833-2022

---

## MEMORANDUM OPINION

In this dispute over a residential pool construction project, Elite Concepts, Inc. appeals from a final judgment awarding damages to David and Bria Field and failing to award it attorneys' fees. We hold that the parties' contract did not exclude remedial damages, that sufficient evidence supports the award of those damages, and that Elite was not entitled to attorneys' fees. We affirm.

## BACKGROUND

Bria and David Field were planning to build a custom home when they met

Mike Nantz, a contractor with 36 years' experience in the pool industry and the owner of Elite Concepts, Inc. Nantz prepared a rendering of a pool for the Fields, and later a detailed proposal and construction contract, which the Fields and Elite (by Nantz) signed in June 2021. Among other provisions, the construction contract listed a payment plan for the $222,144 price consisting of a down payment followed by four payments at or after certain points of the project.[1] The contract provided that "Contractor's liability and Buyer's sole and exclusive remedy are limited to repair of the swimming pool."[2] The contract also provided that if suit was brought "for the purpose of determining or enforcing the rights of either party hereunder, the party prevailing in such action or proceedings shall be entitled to recover from the other party all costs and expenses incurred by the prevailing party, including reasonable attorney's fees."

Construction began in August 2021 and proceeded much like any other. Some work had to be redone, there were delays (some due to the weather), and there were changes to the plans as construction progressed that added to the overall cost of the project. For example, the Fields requested that the pool be moved 24-30 inches immediately after the hole was dug; they made a number of upgrades, including to the pool tile, the pavers and underlayment for the deck surrounding the pool, and the built-in swim system; and they requested other changes, including to the fire pit. Nantz discussed the additional costs with the Fields, made the upgrades and changes, and submitted three change orders reflecting the costs.

---

[1]    Specifically, a $22,000 down payment, three payments of $60,043.20, and a final payment of $20,014.40.

[2]    In the very next sentence, the contract says, "In no event will Contractor be liable for any damages, including without limitation, incidental and consequential damages and damages for lost profits or inability to use the swimming pool, even if Contractor has been advised of such possibility." Despite the broad "any damages" language, Elite acknowledges that the contract permits recovery of at least "the cost to remedy or repair the pool."

2

A payment dispute brought the project to a halt about a year after it began. In addition to the down payment, the Fields made the next three payments of $60,043.20 as contemplated by the contract. But of the three change orders, they paid only the first. After Nantz requested payment of the second change order ($51,412.48), and the Fields assured him they would pay but did not, Elite "walked the job" and repossessed some pool equipment.[3] When Elite left the job, the Fields owed $61,114.98 for the second and third change orders.[4] The Fields also did not make the final payment under the contract of $20,014.40 because it had not yet come due ("at plaster"). The Fields paid a different contractor $81,199.57 to complete the pool—almost exactly the amount they had agreed to pay Elite upon completion but did not.

The Fields sued Elite and Nantz for breach of contract and other theories seeking damages and attorneys' fees. Elite and Nantz counterclaimed for breach of contract and quantum meruit and also sought attorneys' fees. Trial was to the bench at which the Fields, Nantz, and an expert for each side testified. The trial court later signed a final judgment that contained the following findings, among others:

- Elite "breached the contract by stopping work for non-payment of change orders, which were outside the contract";

- the Fields' "cost to complete the pool was $68,000.00";

- the Fields "were damaged by [Elite's] breach, for the cost of completion of the pool, in the amount of $68,000.00, pursuant to their claim for Breach of Contract";

- the Fields "requested, and received additions and upgrades to the pool project, for which they knew [Elite] expected to be paid, in the amount of $61,114.98";

---

[3]    Nantz learned that David had contacted some of his suppliers, which gave Nantz the impression that David "was trying to work around [Nantz] and not pay [him] what was due."

[4]    Elite filed a lien against the Field's property pursuant to Article XVI, § 37 of the Texas Constitution in the same amount.

- Elite "was damaged by the [Fields'] failure to pay for the change orders, which were outside the contract, in the amount of $61,114.98, pursuant to its claim for Quantum Meruit"; and

- the "Parties stipulated, and the Court finds, that the reasonable and necessary attorneys fees incurred by each party … is $75,000.00 per side" plus appellate attorneys' fees.[5]

The trial court ordered that the Fields "shall have judgment against Elite Concepts" and awarded the Fields $6,885.02 and attorneys' fees in amounts stipulated.[6] The trial court ordered that Elite "take[] nothing." Elite filed a motion to modify, overruled by operation of law, arguing that it too was entitled to attorneys' fees as a prevailing party on its quantum meruit claim. After Elite appealed to the Fifth Court of Appeals, the appeal was transferred to this Court pursuant to a docket equalization order issued by the Texas Supreme Court under Chapter 73 of the Government Code.[7]

## DISCUSSION

Elite challenges the award of damages to the Fields and the failure to award it attorneys' fees. We address each in turn.

## I. The Fields' Damages

### A. Damages under the construction contract

Elite first argues that the Fields were not entitled to recover damages for the cost to *complete* the pool because the construction contract limited their damages to

---

[5]  Although findings "must not be recited in a judgment," TEX. R. CIV. P. 299a, neither side objected to their inclusion in the judgment, nor are there any separately filed findings.

[6]  The trial court also rendered judgment for Nantz individually, since he signed the construction contract on behalf of Elite.

[7]  The parties filed a joint agreed motion to supplement the record with the preadmitted exhibits from the bench trial. We grant the motion. *See* TEX. R. APP. P. 34.6(d).

the cost to *repair* the pool, and there was no evidence of any such amounts.[8]

It is well settled that remedial damages is the proper measure of damages for breach of a construction contract when there has been substantial performance.[9] "Once a construction project has been substantially completed, the damages for errors or defects in construction is the cost of *completing the job or of remedying those defects* that are remediable without impairing the building as a whole."[10] The standard is often stated in the disjunctive—"cost to complete *or* repair"—not because completion and repair are two different *measures of damages*, but because they are different *types of remedial costs* when construction is substantially complete.[11] As the terminology suggests, one is based on the owner's cost to complete work that was *not* done ("omissions"), whereas the other is based on the cost to repair work that *was done* but done incorrectly ("repairs").[12] Courts have occasionally referred to remedial damages as only one or the other of these measures,

---

[8] The Fields respond that Elite waived this issue by submitting an agreed draft of the final judgment and failing to obtain a ruling on its motion to modify. But there is nothing in the record to show that Elite intended to waive its right to complain about the judgment. *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). And Elite's motion to modify is relevant to Elite's attorneys' fees issue, not this issue, because the motion challenged the judgment as to fees. In any event, the motion preserved error for the contentions raised therein. *See* TEX. R. APP. P. 33.1(b).

[9] One of the experts testified that the project was substantially complete when Elite left the job. The other testified that the project was about 90% complete when Elite left.

[10] *Ashford Partners Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 39 (Tex. 2012) (emphasis added); *see McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) ("There are two measures of damages for the breach of a construction contract: (1) remedial damages, which is *the cost to complete or repair* less the unpaid balance on the contract price, and (2) difference-in-value damages, which is the difference between the value of the building as constructed and its value had it been constructed according to the contract." (emphasis added)). Difference-in-value damages are not involved here.

[11] *Compare* ACRET, CONSTRUCTION LITIGATION HANDBOOK 3d § 11:12 (3d ed.) (cost of correction), *with id.* § 11:13 (cost of completion) ("Cost of completion is analogous to cost of correction as a measurement of the owner's damages sustained because of a contractor's breach of contract.").

[12] *See Ashford Partners*, 401 S.W.3d at 39 ("Substantial completion … implies that the parties have been given the object of their contract and that any *omissions* or *deviations* can be remedied." (emphasis added)).

or used them interchangeably.[13] But both may be necessary in appropriate cases to put an owner "in as good a position as if the contract had been performed."[14]

Accordingly, we disagree with Elite that the clause in the parties' contract limiting its liability to cost "to repair of the swimming pool" excludes cost to complete it. Construing "repair" to exclude incomplete work would render this construction contract illusory, allowing Elite to walk off the job at any time owing nothing.[15] We must strive to construe the contract to avoid an interpretation that makes its promises illusory.[16]

Given that cost to complete and cost to repair are two ways of saying remedial damages,[17] and construing the damages provision "to mean something rather than nothing at all,"[18] we hold that the parties unambiguously intended to limit liability to remedial damages generally, and thus permit recovery of the cost to complete the work, as awarded by the trial court. We overrule Elite's first issue.

## B. Evidence of damages

Elite next contends that insofar as the Fields could recover damages for the cost to complete the pool, there was no evidence of that amount or whether those amounts were reasonable.

---

[13]    *See, e.g.*, *id.* at 39–40 (stating that "[a] contractor who has substantially performed its contract, but whose performance is deficient in some respect, is generally responsible for the *cost of repair*," but also that "cost of repair is the appropriate measure of damages to remedy an *omitted* item on a substantially-completed building") (emphasis added).

[14]    24 WILLISTON ON CONTRACTS § 66:17 (4th ed.).

[15]    *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance.").

[16]    *See Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 669 (Tex. 2008); *Portland Gasoline Co. v. Superior Mktg. Co.*, 243 S.W.2d 823, 824–25 (Tex. 1951); *Young v. Neatherlin*, 102 S.W.3d 415, 420 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

[17]    *McGinty*, 372 S.W.3d at 627.

[18]    *Portland Gasoline*, 243 S.W.2d at 824.

The parties are familiar with the standard of review.[19] "A party seeking to recover remedial damages must prove that the damages sought are reasonable and necessary."[20]

Scott Moneta, the Fields' expert, testified that in addition to plaster, the pool needed plumbing, drainage, and electrical work performed and that the amounts to do so were reasonable and necessary. David Field testified that he and his wife paid a contractor "about $80,000" to "fix" the pool. Bria testified that when Nantz left the job the backyard was unusable. By contrast, Nantz and his expert Dustin Porter estimated that the cost to complete the pool was approximately $20,000, roughly the same amount as the final payment under the construction contract that never came due ($20,014.40 at plaster).[21] The trial court's damages finding of $68,000 is within the range of evidence and legally sufficient.[22] We overrule Elite's second issue.

## II. Elite's Attorneys' Fees

Elite next argues that it was entitled to an award of attorneys' fees under Chapter 38 of the Civil Practice and Remedies Code regardless of whether it obtained a net recovery. A party may recover attorneys' fees under Chapter 38 if it

---

[19] We review the trial court's findings of fact using the same evidentiary standards that apply to jury verdicts. *Bekins Van Lines, Inc. v. Kahn*, 717 S.W.3d 86, 94 (Tex. App.—Austin 2025, pet. denied). We will sustain a legal sufficiency challenge if the evidence offered to prove a vital fact is no more than a scintilla. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). We credit evidence that supports a verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.*

[20] *McGinty*, 372 S.W.3d at 627.

[21] To be precise, Porter opined "plus or minus of 25% of the range of the $20,000 estimated by Elite."

[22] Elite argues that if sufficient evidence supports the Fields' damages, then that amount should be offset by the amount they didn't have to pay to finish the pool: $20,014.40. It is true the Fields did not have to pay that amount, but that is because the work was not performed. If the work was *not performed*, then it was properly included in the damages representing work needed to *complete* the project.

(1) prevails on a quantum meruit claim and (2) recovers damages.[23] Whereas the final judgment orders that the Fields "shall have judgment against" Elite and recover "[a]ctual damages in the amount of $6,885.02," it orders that Elite "take[] nothing." The trial court correctly declined to award attorneys' fees to Elite because the Fields' $68,000 loss exceeded Elite's loss, making the Fields the prevailing party.[24] As Elite recovered no damages, it was not entitled to fees under Chapter 38.[25] *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). We overrule Elite's third issue.

## CONCLUSION

Having overruled Elite's issues, we affirm the trial court's judgment.


/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

---

[23] TEX. CIV. PRAC. & REM. CODE § 38.001(1)–(3); *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015).

[24] *See Rasa Floors, L.P. v. Spring Village Partners, Ltd.*, No. 01-08-00918-CV, 2010 WL 4676978, at *7 (Tex. App.—Houston [1st Dist.] Nov. 18. 2010, no pet.) (holding same).

[25] The trial court appears to have offset its damages findings rather than its damages awards, but Elite does not assign any error to that decision, or to the trial court's judgment that Elite "take[] nothing."

8